S. Samuel Di Falco, S.
The present controversy in this estate is over the precise fractional interest of the widow’s trust in the whole estate. It has been decisively settled that the trust created for her “ is a fractional trust which shares proportionately in appreciation or depreciation of assets of the estate between the death of the decedent and the funding of the trust.” (Silverman-, S., Official Decisions, 1968, vol. 4, p. 1773, affd. on the opinion of Judge Silverman", 32 A D 2d 905, affd. 27 N Y 2d 540.) The widow and her two sons (who are the three executors) differ widely in stating the fraction, the widow contending that her trust’s share is 55.52% of the distributable estate, while the sons find it to be initially 29.57%, the fraction thereafter changing as disbursements or distributions were made. Their differences extend to both numerator and denominator of the fraction.
The widow’s trust is created in article Fourth of the will, which reads in part: “ If my wife, Ruth K. Palitz, survives me, it is my intention to take the maximum Marital Deduction allowable for Federal estate tax purposes, and to that end I give and bequeath to my Executors and Trustees such part of my estate as equals the amount by which (a) the value of one-half of my adjusted gross estate, as defined in the Internal Revenue Code at the date of the execution of this Will; exceeds (b) the aggregate of (i) the value of the bequest to her in article Second of this Will, and (ii) the value of such part of said adjusted gross estate, if any, which is not disposed of by this Will but has passed or passes to my wife in such manner as to be allowed as part of said Marital Deduction.” The text continues in familiar terms, directing that only assets which qualify for the marital deduction are to be incorporated in the trust; all income is to be paid to the wife during her lifetime; she is to have full power to appoint the corpus by will. There is also a provision for payments to her from principal.
The residuary estate passes under article Sixth. It is phrased in the usual text, dividing the residue among the three children. The sons receive outright legacies; the daughter’s share is in trust.
There is no real difficulty in determining the numerator of the fraction. The will is plain in this respect. One half the adjusted gross estate is $733,691.52. All agree that there must be deducted the value of the property that passed to the widow *138 outside the will or by way of other legacies under the will. This deduction is stated by the widow to be $184,300, and the value of the property included in such deduction is not disputed. The widow, however, has failed to deduct transfers to her which were included in the taxable estate by the taxing authorities, and the executors have deducted too much additional in this respect. The inclusion of property transferred prior to death was by way of compromise with the taxing authorities. The transfers questioned by the Government aggregated $80,000, of which the widow received $48,000. The compromise fixed the taxable transfers at $62,500, without identifying the property. The sons have deducted the entire $62,500, a palpable error. The widow initially made no deduction at all, but argues that at most her share is reduced by only 48/80 of $62,500, or $37,500. The latter is correct. Thus the court finds the numerator of the fraction to be $511,891.52 (being one half of the adjusted gross estate minus the agreed deduction of $184,300 and the further sum of $37,500).
The deduction by the executors of the value of the necklace is so plainly erroneous as to require no further discussion.
We have seen that the will has explicitly set forth the basis for determining the numerator of the fraction. The rest of the problem, including the basic one of whether the legacy was fractional or pecuniary, does not find solution in the explicit terms of the will, being left largely to inference and implication. Indeed, in his decision construing this trust, Judge Silverman said: “ It seems unlikely that the testator really focused on the question of whether the residuary trust should be pecuniary or fractional. However, the decision may turn on even faint indications in the language of the will.” (Official Decisions, vol. 4, 1968, p. 1770). What tipped the scale in favor of the fractional gift was the use of the word 11 part ’ ’, read against the constructional preference revealed in court decisions and the equities and particular background facts of this case.
One thing that does stand out clearly in article Fourth is the testator’s declared purpose of obtaining the maximum marital deduction that the law would allow and his obvious intention to lose no part of that deduction by other provisions of his will or action by his fiduciaries. We have his statement to that effect in article Fourth, and we have also the many instances cited in Judge Silverman’s decision as indicative of a tax-conscious individual.
The sharpest difference among the parties is whether estate taxes must be deducted from the adjusted gross estate in arriving at the denominator of the fraction. We recall that the *139 marital deduction trust is created in article Fourth of the will, and the entire residue is disposed of by article Sixth. Estate taxes are referred to in article Eleventh, paragraph (d) which reads: ‘ ‘ There shall be charged against my residuary estate, without right of reimbursement, all estate and inheritance taxes of whatever kind imposed upon the legacies and bequests in Articles First, Second, Third and Fourth of my Will, and upon any insurance on my life.”
It is patent that if there were no increases or decreases in the estate assets, it would make no practical difference whether estate taxes were or were not deducted in determining the denominator as long as the same figure be used in the fund against which the fraction is applied. The identical figures would cancel out in such application, leaving the marital deduction numerator unaffected. (Lowndes-Kramer, Fed. Estate and Gift Taxes [2d ed.], § 42.5, p. 837; Casner, Estate Planning [3d ed.], p. 801.) Therefore, as long as the fraction used and the fund to which it is applied produce the maximum marital deduction, the tax advantage will not be lost. (Covey, The Marital Deduction and the Use of Formula Provisions, p. 3.) There have been very substantial gains in the course of this estate administration. The decision on construction of the will adverted to the fact that there was a substantial increase in value in the ten years following the decedent’s death. (Official Decisions, 1968, vol. 4, p. 1772.) An increase during the past year has been quite substantial. Thus we are dealing with great increases, not decreases, and any fair allocation of the gains will not jeopardize the marital deduction or frustrate the testator’s declared intention. If the treatment of the gains would have jeopardized the marital deduction, the declaration in the will would have pointed the path to follow. Lacking directions in the will itself, we must turn to the rules generally applied by the courts to allocation of gains and losses to fractional estate interests.
The frequently cited decision in Matter of Meerbaum (Surrogate’s Ct., Kangs County, N. Y. L. J., Sept. 29,1961, p. 14, col. 6) sets forth an equitable rule. (See Covey, The Marital Deduction and Use of Formula Provisions, p. 26; Casner, Estate Planning [3d ed.], Supplement to p. 800, n. 34.) That case involved an intestate estate. Surrogate Moss said: “ The payment out of the estate [of] taxes assessable against the shares in the estate of the collateral relatives is in the nature of an advancement to them on account of their distributive shares in the estate. Ho income could be earned or increment realized by the estate on funds which it had already disbursed. To the *140 extent that these funds were disbursed for the benefit of the collateral relatives, such relatives share only in income earned and increment realized on that part of the assets remaining in the estate to which they will ultimately be entitled, together with income earned and increment, from the date of death until the payment of estate taxes, on that portion of estate assets used to pay estate taxes properly chargeable to their distributive shares.”
In an administration of an estate, the residuary will normally contain assets that later will be used or liquidated to pay estate taxes. The assets so used may in the meantime produce income and may ultimately increase or decrease in value prior to liquidation. While in the hands of the executors, they are part of the estate being administered. As soon as property is taken from the residue to meet the estate tax obligation, the residuary is diminished in value and a marital trust correspondingly has a larger fractional share in the aggregate of the estate properties. The equity of the rule applied in the Meerbaum case was recognized by our Legislature when it enacted Personal Property Law section 27-d to govern distribution of estate income (L. 1965, ch. 336, amd. by L. 1966, ch. 276; now EPTL 11-2.1, subd. [d], par. [2]). Prior to the enactment of that rule, the Court of Appeals had applied a rule of convenience rather than equity (Matter of Shubert, 10 N Y 2d 461, 477), holding that for purposes of income allocation, one single ratio was to be maintained throughout the entire period of administration without regard to estate tax payments, and that ratio was the one set up by the testator in his will. To adopt the contrary argument, said the court, 1 ‘ would be to burden the administrators of the estate with the duty of constantly evaluating the respective interests for purposes of net income distribution. ’ ’ (p. 477). The Legislature, however, thought that the equities outweighed the inconvenience and that equity demanded that estate taxes be taken into account, evidently feeling that this item was substantial enough to justify changing the relative interests in the unsegregated and commingled funds. Matter of Meerbaum extended the same equitable rule to allocation of capital gains. The idea was not entirely a new one, because, without statutory mandate the courts have not hesitated to direct the revaluation of respective interests .when a distribution to one beneficiary changed the relative interests in what remained in the common pool. Thus in Matter of White (20 N Y 2d 791) the Court of Appeals reversed the lower courts because they had failed to take into account a distribution ‘to, one beneficiary, and it ruled that this beneficiary “ is only entitled to the appre *141 ciated value of the estate which is attributable to the undistributed portion of the testator’s general bequest to-[it].” (p. 792).
The question of allocation of gains and losses is basically the same as in allocating income, and the question in each case is: “ should the primary consideration be achieving equity or ease of administration” (Covey, supra, p. 26). The Legislature has pointed the way in respect of the division of income. The court believes that the same rule should be applied with respect to gains.
It is suggested that there should be different rules for a preresiduary marital formula trust and for a marital formula residuary trust. Differences in text and context may, of course, call for different treatment of shares, even when both shares are of the residuary estate. For example, in Matter of Steinfeld (N. Y. L. J., Feb. 22,1971, p. 19, col. 6), the division of the shares and the bequest of the residue explicitly referred to estate taxes. In the present case there is no distinctive text requiring special treatment. The fact that the gifts are set forth in two separate paragraphs of the will has no real significance. The testator’s intent and purpose would not have been different if both gifts were in the same paragraph — at least, insofar as intent and purpose are revealed in his expression. It has aptly been said: ‘£ A court should not reach a different result as to the allocation of gains or losses depending upon which type of provision is used when * * # the end result of each is the same — obtaining the maximum marital deduction. It is doubtful that a testator would use one type rather than the other because of such a distinction.” (Covey, The Marital Deduction and the Use of Formula Provisions, pp. 27-28).
The executors have also argued that principal distributions must be taken into account and the fraction must be changed with each payment to the widow. To arrive at this figure, or these constantly changing figures, is not without its complications in this particular estate. The two sons constitute the controlling majority. The widow is entitled to annual payments from her trust, with principal invaded when income is insufficient. The trusts should long ago have been set up. The court foresees further contests respecting the nature of the payments already made to the parties, apportioning- proceeds of assets said to be unproductive, and similar issues. It is, of course, true that any distribution of principal heretofore actually made to the trustees of a trust and placed in the corpus of that trust must be treated as the court directed in Matter of White (20 N Y 2d 791, supra). Any distribution of corpus to any residuary *142 legatee must be treated in the same manner. Such a distribution is clear and unequivocal. However, nearly 14 years have passed since this estate administration began. Presumably many annual payments have been made to trust beneficiaries without specification as to their character as principal or income. Lacking a definitive distribution of principal to the trustees, the court should not now analyze every payment in an attempt to ascertain whether and to what extent any one invaded principal, and to compel a new allocation each time an annual payment was found to have exceeded annual net income. Equity is not served by offering new grounds for litigation to parties who already have more than enough points of difference. Equity will be satisfied if we take into account capital distributions made and accepted as distributions of principal, that is, capital assets removed forever from the risks shared in the common pool and placed in the hands of one free to invest or use it as prudence and necessity demand. This may not be the rule for all cases, but it is the rule of justice in this estate so torn by litigation.
There are other disagreements respecting the denominator which are less complex. There must, of course, be deducted from the adjusted gross estate the value of all property passing outside the will. Under no conceivable circumstances could the residuary legatees share in the increase or decrease in value of such property. There must also be deducted the value of all specific legacies.
The figures should not be the subject of dispute. Taking the figures from the briefs, and subject to correction for any mathematical mistake: the adjusted gross estate is valued at $1,467,383.04; property passing outside the will has an aggregate value of $217,500; specific bequests amount to $49,321.96. The initial denominator equals 1,200,561.08. Thus the first fraction is 511.891.52 over 1,200,561.08. This fraction will be applied to all gains realised up to the first payment of estate taxes. Each payment of estate tax will reduce the denominator and will result in a new fraction applied to gains realised during the period while that fraction persists. The total estate taxes are said to amount to $211,095.09, so that the fraction after taxes will be 511.891.52 over 989,465.99. There is dispute concerning whether, and, if so, what distributions of principal were made. We are dealing here with an argument on questions of law and further issues of fact must await the judicial settlement of the account.