398 A.2d 983

ESTATE OF Albert M. GREENFIELD, Deceased.

Appeal of Albert M. GREENFIELD, Jr.

Appeal of Mervin J. HARTMAN, Esquire, Guardian and Trustee Ad Litem.

Supreme Court of Pennsylvania.

Argued Nov. 14, 1978.

Decided March 14, 1979.

142

John A. Eichman, III, Philadelphia, for appellant at No. 116 and appellee at No. 118.

Mervin J. Hartman, Philadelphia, for appellant at No. 118.

John J. Lombard, Jr., Walter E. Nelson, Jr., Obermayer, Rebmann, Maxwell & Hippel, Robert K. Greenfield, Philadelphia, for appellees at Nos. 116 and 118.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

We are asked to decide whether the executors of the Albert M. Greenfield estate properly allocated the increase in the value of estate principal, accrued over the estate's administration, between the electing spouse and the residuary trusts. The executors used the "changing fraction" method of allocation, which allocated appreciation to the electing spouse on the basis of her actual share of the principal fund. We reject appellants' contention that use of this method of allocation was improper.

Albert M. Greenfield died on January 5, 1967. His will directed, inter alia, that his wife receive a life interest in the income of, and a power of appointment over, one-third of his estate, and that his residuary estate be used to fund trusts of equal size for the benefit of his children and their issue. Testator's widow, appellee Elizabeth Greenfield Petri, a co-executrix of the estate and a co-trustee of the residuary trusts, elected to take against the will.

The executors filed their first account on May 31, 1971. The Court of Common Pleas of Philadelphia (per Bolger, J.) filed an adjudication dated May 22, 1972, and a supplemental adjudication dated October 10, 1972. Exceptions to the adjudication of May 22 were filed with respect to the directed distribution of paintings in decedent's art collection. The court en banc reversed the auditing judge and amended his adjudications. On appeal, this Court dismissed the exceptions and reinstated the adjudications of the auditing judge. *Greenfield Estate,* 457 Pa. 114, 321 A.2d 922 (1974).

The statement of proposed distribution submitted to the auditing court and reviewed in its adjudication of May 22, 1972, requested, in relevant part, the following distribution as between the electing widow and the residuary trusts.

"PRINCIPAL

| | |
|---|---|
| ELIZABETH M. GREENFIELD [PETRI] | One-Third (⅓) of the net probate Estate. |
| PROVIDENT NATIONAL BANK<br>ELIZABETH M. GREENFIELD [PETRI]<br>ALBERT M. GREENFIELD, JR.<br>BRUCE H. GREENFIELD and<br>GUSTAVE G. AMSTERDAM,<br>Trustees | Balance of Estate, after payment of Federal Estate Tax into equal separate trusts for each of ALBERT M. GREENFIELD'S Five (5) children, namely:<br>GORDON K. GREENFIELD<br>ELIZABETH G. ZEIDMAN<br>CARLOTTA G. HOWARD<br>PATRICIA G. MARK<br>ALBERT M. GREENFIELD, JR." |

"INCOME

Balance of Income in the Estate to be distributed to ELIZABETH M. GREEN-FIELD [PETRI], and to each of the five Separate Trusts for the children of ALBERT M. GREENFIELD, PROVIDENT NATIONAL BANK, ELIZABETH M. GREEN-FIELD [PETRI], ELIZABETH G. ZEIDMAN, ALBERT M. GREENFIELD, JR., BRUCE H. GREENFIELD and GUSTAVE G. AMSTERDAM, Trustees, based on their respective interest in the principal assets held from time to time by the Executors."

Thereafter, the executors filed a schedule of distribution for the period ending September 30, 1973, and adopted therein the "changing fraction" method of share allocation for both principal and income. The propriety in the distribution of the appreciation of principal is the subject of these appeals.

Appellant Albert M. Greenfield, Jr., a co-executor and co-trustee and a residuary trust beneficiary under his father's will, filed objections to the schedule. Appellant Mervin J. Hartman, guardian ad litem for minor beneficiaries and trustee ad litem for unborn and unascertained beneficiaries, joined appellant Greenfield's objections. Appellee filed objections to the calculation of her Pennsylvania inheritance tax obligation. The parties filed several stipulations of fact,[1] hearings were held before Judge Pawelec and in a further supplemental adjudication of May 26, 1977, the court sustained Mrs. Petri's objections and dismissed appellants'. 28 Fiduc.Rep. 314 (O.C. Phila.1978).

In the supplemental adjudication, Judge Pawelec characterized the difference between the fixed fraction and changing fraction methods:

"When the fixed fraction method is used, the principal is distributed and the gains and losses are charged according to the statutory percentage. . . . In essence, the fixed fraction method treats the legacies and taxes which

1. The parties have stipulated that if appellants' succeed on this appeal, Mrs. Petri's distributive share of principal should be decreased by $275,000 and the principal share of the residuary trusts should be increased by $55,000 each.

had been paid and the advance distributions which have been made as if they were still part of the corpus, when, in fact, they no longer are part of the estate. As a result, in many instances, the non-elective portion shares in gains and losses in a proportion which did not in fact exist when the gains or losses were realized.

\* \* \* \* \* \*

"[T]he changing fraction method allocates the gains and losses realized on the principal of an estate among those who are in fact the owners of the principal at that time in the same proportions as their respective interests in the existing balance."

Id. at 325–327.[2]

Judge Pawelec concluded, in his adjudication of May 26, 1977, that the prior adjudications did not direct the method

2. Judge Pawelec illustrated the difference in these methods:

"Let us assume that the net probate estate of a decedent is $300,000 and the widow's statutory elective share is one-third. Thus, upon her election she becomes entitled to $100,000. If federal taxes and legacies are paid out of the non-elective share (as they must be) in the amount of $100,000, there remains in the estate $200,000 in principal. The elective and non-elective shares then are $100,000 each. However, if this principal increases by $150,000 and becomes $350,000, under the fixed fraction method, the widow receives one-third of the increase and her distributive share is $150,000. The non-elective share would get two-thirds of the increase, and its distributive share would be $200,000. Thus, the value of the non-elective share increased by 100% and the value of the elective share increased 50% although both shares had exactly the same amount of money attributable to their respective shares in the estate. We can envision the problem had this been a $150,000 loss rather than gain.

\* \* \* \* \* \*

Under the changing fraction method, each would receive a proportionate share, i. e. $175,000. The method would also function if there were a loss of $150,000. Each would get $25,000, thus sharing in the loss proportionately.

The fairness and logic of the changing fraction method is further illustrated when we apply it to the distribution of income whereas it is difficult, if not impossible, to justify the fixed fraction method. This, again, is best illustrated by the same sample as above. Assuming the elective share as $100,000 and the remaining non-elective share as $100,000 and an annual income of $12,000, under the fixed fraction method, the elective share would get $4,000 and the non-elective $8,000. This is not fair, equitable or logical." 28 Fiduc.Rep. at 326–27.

for calculating the distributive shares of principal. The court then directed that appreciation in the value of the assets of the estate be allocated according to the changing fraction method, as the schedule requested. Appellants filed exceptions to that portion of the supplemental adjudication adopting the changing fraction method of allocation. The exceptions were dismissed by the court en banc and these appeals followed.[3] We affirm.

■ Appellant Greenfield argues that the supplemental adjudication of May 22, 1972, and Section 2508[4] of the Decedents, Estates, and Fiduciaries Code, require the use of a fixed fraction method of allocating the growth of estate assets to distributive shares. We agree with Judge Pawelec

3. We hear these appeals pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(3), 17 P.S. § 211.202(3) (Supp.1978). Appellants do not and have never challenged use of the changing fraction method of income share allocation. Further, no appeal was taken from that portion of the May 26, 1977 supplemental adjudication sustaining appellee's objections.

4. Section 2508 provides:
"Change by election of
surviving spouse

(a) Right of election.—When a married person dies testate as to any part of his estate, the surviving spouse while living shall have a right to election under the limitations and conditions hereinafter stated: Provided, That the spouse so electing also must elect to take against all conveyances within the scope of section 6111(a) of this code (relating to conveyances to defeat marital rights), of which he is a beneficiary.

(b) Share of Estate.—The surviving spouse, upon an election to take against the will, shall be entitled to one-third of the real and personal estate of the testator if the testator is survived by more than one child or by one or more children and the issue of a deceased child or children or by the issue of more than one deceased child, and in all other circumstances the surviving spouse shall be entitled to one-half of the real and personal estate of the testator.

(c) Power of appointment.—The surviving spouse, upon an election to take against the will, shall not be entitled to any share in property passing under a power of appointment given by someone other than the testator and exercised by the will of the testator whether or not such power has been exercised in favor of the surviving spouse and whether or not the appointed and the individual estates have been blended."

that nothing in the 1972 adjudications or Section 2508 controls whether Mrs. Petri is limited to a one-third share of principal appreciation through the term of the estate's administration.[5] Appellant Greenfield, and appellant Hartman, further contend that on the facts of this case use of the changing fraction method is inequitable.

They argue that at the initial stages of the administration of the estate there was no notice that such a rule would control the distribution of principal appreciation. They maintain further that, as a result, parties withdrew disproportionate principal sums and did so in reliance on their reasonable belief that the fixed fraction method would be used.[6] Essentially, they argue that the May 26, 1977, decree of Judge Pawelec retrospectively applies "new law," unjustly enriching the electing widow at the expense of the trust beneficiaries. We do not agree. Use of the changing fraction method produces the equitable result of allocating growth in the assets of the estate in proportion to all parties' actual interests in the fund which generated the growth.

A surviving spouse who elects against the will creates a fractional share interest in the decedent's estate. See *Rittenhouse Estate,* 466 Pa. 378, 353 A.2d 404 (1976). Where such an interest is created by will (usually to take advantage of the maximum federal estate tax marital deduction), the commentators are unanimous that the spouse is entitled to share in estate appreciation calculated on the changing fraction rule. E. g., Casner, I Estate Planning, 3d ed., 800 n. 34 (Cum.Supp.1978, 1386) ("In the absence of compelling

5. We note that the Uniform Principal and Income Act similarly fails to prescribe a method of allocation of gains and losses of principal, although it does provide for a changing fraction method of allocating income appreciation. Uniform Principal & Income Act (Revised 1962) § 5(b)(2). Pennsylvania has adopted a modified version of the Uniform Principal & Income Act of 1931 which does not address income appreciation distribution. 20 Pa.C.S.A. §§ 8101 et seq. Compare 20 Pa.C.S.A. § 3543(d) (pro-rata distribution of income).

6. Mrs. Petri's statutory fractional share of the estate is one-third. 20 Pa.C.S.A. § 2508(b). Since taxes and significant legacies have been (or are to be) distributed from the remaining estate, the residuary trusts will be funded by less than two-thirds of the estate.

statutory language, the share of estate income payable to a residuary taker should vary from time to time as a residuary taker's share in the estate corpus held by the executor varies as a result of disbursements out of his or other shares which have become fixed. The sharing in gains realized by the estate should follow the same pattern."). Dole, "A Technique for Making Distribution of Principal and Income to Residuary Beneficiaries during the Administration with Application to Trusts," 79 H.L.R. 765 (1966); Polasky, "The Marital Deduction Formula Clauses in Estate Planning—Estate and Income Tax Consideration," 63 Mich.L.R. 809; Shaiman, "The Widow's Election, Tax and Fiduciary Considerations," 40 T.L.Q. 1 (1966); Sheets, Estate and Gift Tax Branch, Internal Revenue Service, "Practical Solution to [Regulation] 64–19," Trusts and Estates, 71 (1965) cited in Appellee's Brief, page 48.

In *Estate of Palitz*, a New York surrogate court held that gains would be calculated by the changing fraction method where a testator created a fractional marital trust which was to share proportionally in appreciation or depreciation of estate assets between the dates of his death and the trust funding, and there were increases in the value of the estate assets during administration. 70 Misc.2d 136, 139, 331 N.Y. S.2d 929, 934–35 (1972). *Palitz* explains:

"The frequently cited decision in *Matter of Meerbaum* (Surr.Ct.Kings Co., N.Y.L.J. September 29, 1961, p. 14, col. 6) sets forth an equitable rule. (See Covey, The Marital Deduction and Use of Formula Provisions, p. 26; Casner, Estate Planning, 3rd ed., Supplement to p. 800, n. 34.) That case involved an intestate estate. Surrogate Moss said: 'The payment out of the estate [of] taxes assessable against the shares in the estate of the collateral relatives is in the nature of an advancement to them on account of their distributive shares in the estate. No income could be earned or increment realized by the estate on funds which it had already disbursed. To the extent that these funds were disbursed for the benefit of the collateral relatives, such relatives share only in income earned and increment

realized on that part of the assets remaining in the estate to which they will ultimately be entitled, together with income earned and increment, from the date of death until the payment of estate taxes, on that portion of estate assets used to pay estate taxes properly chargeable to their distributive shares.'

"In an administration of an estate, the residuary will normally contain assets that later will be used or liquidated to pay estate taxes. The assets so used may in the meantime produce income and may ultimately increase or decrease in value prior to liquidation. While in the hands of the executors, they are part of the estate being administered. As soon as property is taken from the residue to meet the estate tax obligation, the residuary is diminished in value and a marital trust correspondingly has a larger fractional share in the aggregate of the estate properties. The equity of the rule applied in the *Meerbaum* case was recognized by our Legislature when it enacted Personal Property Law section 27–d to govern distribution of estate income . . . . Prior to the enactment of that rule, the Court of Appeals has applied a rule of convenience rather than equity (*Matter of Shubert,* 10 N.Y.2d 461, 477, 225 N.Y.S.2d 13, 180 N.E.2d 410), holding that for purposes of income allocation, one single ratio was to be maintained throughout the entire period of administration without regard to estate tax payments, and that ratio was the one set up by the testator in his will. To adopt the contrary argument, said the court, 'would be to burden the administrators of the estate with the duty of constantly evaluating the respective interests for purposes of net income distribution.' . . . The Legislature, however, thought that the equities outweighed the inconvenience and that equity demanded that estate taxes be taken into account, evidently feeling that this item was substantial enough to justify changing the relative interests in the unsegregated and commingled funds." (Citations omitted.)

331 N.Y.S.2d at 933–34.

The court noted further:

"The question of allocation of gains and losses is basically the same as in allocating income, and the question in each case is: 'should the primary consideration be achieving equity or ease of administration' (Covey, *supra,* p. 26). The Legislature has pointed the way in respect of the division of income. The court believes that the same rule should be applied with respect to gains."

Id. at 934.

Only the changing fraction rule of distribution of principal appreciation will ensure that the distributive share of an electing spouse will reflect the proportional interest in the estate Section 2508(b) [7] creates. And here, the undisputed method of calculating distributive shares of income already "burdens the administrators of the estate with the duty of constantly evaluating the respective interests for purposes of net income distribution." Thus Judge Pawelec's decree imposes little, if any, of the kind of burden on the estate which, in other circumstances, might justify the use of the "rule of convenience." *Palitz,* supra. In *Weaver Trust,* 25 Fiduc.Rep. 626 (O.C. Montg.1975), President Judge Taxis concluded that the changing fraction rule was to be applied by trustees where disproportionate discretionary advances had been made and the trust assets had appreciated over 100%. In *Weaver,* the court correctly reasoned:

"The difficulty with the fixed share method is that . . [discretionary withdrawals are] treated as though distributed at the time the trust is divided, and not when it actually went out. This is the seat of the inequity here. This $150,000 [advance] was *no longer* a part of the corpus of the trust after January 27, 1958 (and earlier), when it went out and therefore could not and should not share in subsequent increases in principal revaluations, or be subject to decreases in value. While the sums may in fact have been spent by the beneficiaries, they also may have appreciated or depreciated in the hands of the beneficiaries, and should not be allowed to appreciate or depreciate

7. See supra, note 3.

again in the hands of the trustee. In this trust, the corpus has increased from $4,369,706 in 1958 to $9,882,504 on June 24, 1975, or over 100%. The changing fraction method correctly and equitably apportions and limits this appreciation to that principal which, in fact, increased by this amount. The court rules that the changing fraction method shall be used to compute principal shares in dividing this trust, the computation to be set forth in the schedule of distribution hereinafter directed to be filed."

Id. at 629–30. Accord, *Gentle Estate*, 22 Fiduc.Rep. 352 (O.C. Montg.1972); *Lewis Estate*, 26 Fiduc.Rep. 510, 74 D. & C.2d 398 (O.C. Phila.1973).

In the supplemental adjudication, Judge Pawelec held that the logic and fairness of the changing fraction method compelled its application here.

"It is clear that income should be paid according to the percentage of ownership interest. We believe it is just as fair, equitable and logical that capital appreciation be similarly allocated. Furthermore, the chosen method of distribution must be fair, equitable and logical if there be a loss rather than a gain. . . .

'Basically, the crux of the changing fraction theory is that the share of principal which earns income or causes capital gains or losses should receive the benefit of that income or capital gain and, likewise, be responsible for that capital loss. It is unfair that one should receive the attendant benefit or suffer the attendant detriment for gains or losses on property owned by another as would result if the fixed fraction method is used. Accordingly, we conclude that the changing fraction method should be used in determining the distributive shares of principal of this estate.' [sic]"

We agree that no other result would be equitable in this case.

A beneficiary who obtains an advance from an estate no longer shares the common risk of depreciation on that por-

tion of his interest which he has withdrawn. Similarly, any gains on advanced and withdrawn portions of the beneficiary's interest are not shared by all with interests in the fund, but are his alone. Adoption of the fixed fraction rule of convenience for estates with prolonged periods of administration would permit those receiving discretionary advances of their distributive shares to speculate at the expense of those whose full interests, as Mrs. Petri's, remain in the common fund. If there were a gain in the common fund, those who had obtained advanced withdrawals would lose less if they suffered a loss on their withdrawn share and would gain twice if there were a gain on their withdrawn share. But the intent underlying the creation of a fractional share is that risks of appreciation and depreciation be shared equally by the parties based on their interests in the fund which produces the gain or loss. Only the changing fraction rule preserves that fair and equitable result.

Appellee may be correct, in addition, that if executors must allocate appreciation of principal and income according to different methods, then the executors may find themselves in a difficult position because many of their estate management (investment) decisions may favor income beneficiaries over principal beneficiaries or vice versa. Our decision today approving the orphans' court's use of the changing fraction method of allocating principal appreciation precludes this possibility from arising in the estate's management.[8]

Decree affirmed. Each party to pay own costs.

POMEROY, former J., did not participate in the consideration or decision of this case.

8. In view of our decision today, we do not reach appellant Greenfield's argument that adoption of the fixed fraction rule in this case requires other adjustment in the schedule of distribution and appellee's argument that the fixed fraction rule would have adverse federal estate tax consequences.