## Corson Estate

*Philip A. Bregy* and *Christopher H. Gadsden,* for accountants.

*Henry B. Leader,* for Rose beneficiaries.

*Frederick C. Fiechter,* for Joseph K. Corson.

ADJUDICATION BY TREDINNICK, J., MARCH 3, 1981:

*** The accountants request court approval of the "changing fraction" method in adjusting the interests of respective beneficiaries for the distribution of income which has accrued during administration of the estate. According to accountant's calculations, a negligible portion of such income ($14.14) should be payable to Joseph K. Corson, and the balance to the Rose children. The issue achieves importance in a companion matter involving an inter-vivos trust of decedent's late husband, Edward F. Corson. The question is whether or not the "changing fraction" concept is applicable. The Rose children contend it is not.

The facts are as follows: Esther B. Corson, the testatrix, died on January 25, 1979. Her husband, Edward F. Corson, and daughter, Ann C. Wetmore, predeceased her.

By the terms of her will and codicils thereto, testatrix gave her real estate to her son, Joseph K. Corson. The will provided that the residue of her estate was to be divided between her son and her daughter's children, Landon C. Rose, Stuart M. Rose and Robert W. Rose, referred to herein as the Rose children. The will stated that the gift of the real estate to her son was to be treated as "an advancement in determining the size of the two shares so that the share [of the Rose

children should] be larger than the share of [her] son by an amount equal to . . . the fair market value of [the] real estate at the time of [her] death." Item I.E. of the will exercised her power of appointment over a marital trust[1] created by her husband's inter-vivos deed of trust to the extent necessary to give effect to the previously mentioned equalizing provision.

At the time of decedent's death, the real estate was valued at $339,000. Dr. Corson occupied decedent's residence prior to her death and was in possession of it throughout the period of administration. The principal balance for distribution to the Rose children from the decedent's other estate assets was $37,814.40. Since this amount was significantly less than the value of the real estate, the power of appointment exercised in decedent's will in favor of the Rose children was utilized. The principal balance in the marital trust was $226,259.28. The total of the probate estate fund and the marital trust "res" to be distributed to the Rose children is thus $264,073.68. This amount is $74,926.32 less than the value of the devise to Dr. Corson.

It is the accountants' suggestion that the income which has accrued subsequent to the decedent's death be divided on the basis of a changing fraction depending on the period in which the income was earned. The accountants divided the income for these periods on the basis of what they conceive to be the proportional interests of Dr. Corson and the Rose children in principal. Accountants' application of this method of income distribution to *the marital trust* is based on the position that the provision in the will conditionally exercising the power of appointment did not take effect until the estate tax was paid on October 23, 1979, when, it is suggested, the residue was first so reduced as to require funds from the marital trust in order to attempt to equalize the Corson-Rose bequests. Accountants application of this method of income distribution to *the decedent's estate* is based on the position that the equalization clause in the will took effect only partially prior to the payment on account of Pennsylvania inheritance tax on April 23, 1979.

---

1. Orphans' Court Division No. 71811. Trust Estate: Edward F. Corson, settlor sur marital trust for Esther P. Corson.

Initially, we note that the application of the changing fraction method is never mandatory: *Weaver Trust*, 25 FIDUC. REP. 626. In some cases another method of allocation "might well be more proper:" *Id.* at 630.

In every decision in which the changing fraction method has been approved the court has emphasized that the "changing fraction" method was particularly appropriate because it achieved a fair and equitable result. *See: Estate of Greenfield*, 484 Pa. 141; *Lewis Est.*, 74 D. & C. 2d 398; *Weaver Trust*, *supra; Boyer Est.*, 23 FIDUC. REP. 233; *Gentle Est.*, 22 FIDUC. REP. 352. The application of the principle here would achieve the opposite effect.

The scheme and precise wording of the decedent's will clearly specifies that she intended to treat her son and the Rose children equally. As we have noted, the accounts indicate that the distribution of principal to the Rose children is $74,926.32 less than the value of Dr. Corson's share. The accountants' method of allocating income contravenes the decedent's testamentary desire to equalize distributions by aggravating the parties' disparate treatment.

Furthermore, we have found no reported decision applying the "changing fraction" method to a case in which one of the parties awarded income received none of the principal on which the income was earned. The intent underlying the creating of the fractional interest share is that income should be paid according to the percentage of ownership interest: *Weaver, supra.*[2] Such an application produces the equitable result of allocating estate asset growth in proportion to the parties' actual interest in the fund which generated the growth: *Estate of Greenfield, supra.*

Accountants' application of this method is based upon the highly technical and questionable assumptions that the appointment over the marital trust took effect when the U.S. estate taxes were paid and that the equalization clause took effect only partially prior to the payment of the Pennsylvania

---

2. For further explanation of this method see: Levin, Allocation of Income and Changes in Asset Values to Testamentary Fractional Share Gifts, 49 *Temp. L.Q.* 14 (1975); Dole, A Technique for Making Distributions from Principal and Income to Residuary Beneficiaries during Administration of Estates — With Application to Trusts, 79 *Harv. L. Rev.* 765 (1966).

inheritance tax. Based upon these assumptions, the accountants reason that Dr. Corson owned 4.8% of the residue of the estate and 50% of the marital trust before the payment of taxes. At the time of the decedent's death, tax liability was foreseeable and recognized. Dr. Corson never expected to receive any principal from the estate or the marital trust. To deem him an "owner" of principal at any time during the administration of the estate is "pure fiction".

We therefore find that the Rose children are entitled to all the interest which has accrued during the administration of this estate, and direct disbursement of these funds accordingly. * * *