## In re ESTATE OF Harold L. JENKINS.

Court of Appeals of Tennessee, at Nashville.

May 10, 2002.

Permission to Appeal Denied by Supreme Court Oct. 7, 2002.

Timothy L. Warnock, Nashville; Michael D. Sontag, Nashville, for Appellant, Dolores Henry Jenkins.

Charles W. McElroy, Nashville; Brenda Clark, Nashville, for Appellees, Joni L. Jenkins and Kathy A. Jenkins.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Janet M. Kleinfelter, for Appellees' Constitutional Challenge.

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and BEN H. CANTRELL, J., joined.

## OPINION

This appeal involves the narrow issue of the applicability of the "changing fraction" method of calculation of estate income as provided for in T.C.A. § 35–6–202(b)(1), a part of the revised Tennessee Uniform Principal and Income Act (TUPIA). The revised Act was enacted after the estate was opened but before it was closed. On the surviving spouse's motion to apply the "changing fraction" method to the calculation, the chancery court ruled that that method did not apply to this estate but that the "fixed fraction" method did apply. The order was made final pursuant to Tenn.R.Civ.P. 54.02 and the surviving spouse appeals. We reverse in part and affirm in part.

This is the second time that this case has been before the Court, and the pertinent factual and procedural history is set out in the Court's opinion, which we quote:

Harold L. Jenkins ("Decedent"), professionally known as Conway Twitty, died on June 5, 1993. Prior to his death, the Decedent executed a last will and testament and two codicils bequeathing $50,000.00 to Velma Dunaway, the Decedent's mother, and the remainder of his estate to Joni Jenkins, Kathy Jenkins, Jimmy Jenkins, and Michael Jenkins ("Children"), the Decedent's four adult children. On June 14, 1993, these documents were admitted to probate and Hugh Carden and Donald Garis ("Co Executors") were appointed to serve as the co-executors of the Decedent's estate.

The Decedent's surviving spouse, Dolores Henry Jenkins ("Surviving Spouse"), filed a petition for an elective share of the Decedent's estate on December 10, 1993. A dispute subsequently arose among the parties regarding the proper calculation of the Surviving Spouse's elective share. Consequently, the Decedent's daughters Joni and Kathy Jenkins filed a motion requesting that the trial court make a determination regarding the value of the Surviving Spouse's elective share....

*In re: Estate of Jenkins,* 8 S.W.3d 277, 278 (Tenn.Ct.App.1999) [1].

The chancery court, *inter alia,* ruled that the "changing fraction" method rather than the "fixed fraction" method should be used when calculating the surviving spouse's share of the income generated by the assets in the decedent's estate prior to the distribution of her elective share. The court reversed and held that the "fixed fraction" method was the correct method for calculation. The case was remanded for further proceedings consistent with the opinion.

Following *Jenkins I,* the Tennessee legislature amended the TUPIA to conform with the 1997 version of the Uniform Principal and Income Act ("UPIA").[2] In response to this amendment of the TUPIA, the co-executors of the estate moved the probate court to make a determination as to whether the executors should apply the fixed-fraction or changing-fraction method in calculating the Surviving Spouse's share of income generated by the property in the estate.[3] Two of the heirs of the estate,

---

**1.** We will refer to this earlier appeal as *Jenkins I.*

**2.** Until the enactment of the 1997 Act, Tennessee followed the original 1931 version of the UPIA. The legislative history regarding passage of the 1997 UPIA indicates that the Tennessee legislature intended to adopt the

1997 UPIA in its entirety. The sections of the Act which apply to the case at bar, therefore, are identical to those found in the 1997 version of the UPIA.

**3.** Under the old "fixed-fraction" method of calculating income, in a case such as this, the surviving spouse would be allocated her one-

Joni and Kathy Jenkins, (the "Heirs") in their Response to the co-executors' Motion, challenged the constitutionality of the application of the revised TUPIA to this case, and gave notice to the Tennessee Attorney General of the constitutional challenge.

On June 21, 2000, the chancery court entered an Order which provides:

This cause came on to be heard on June 16, 2000, upon the motion of the Co Executors of the estate of Harold L. Jenkins for instructions regarding the interpretation and application of the revised Tennessee Uniform Principal and Income Act passed by the Tennessee General Assembly and approved by the Governor on May 24, 2000, to the distributions made in this estate; said motion was heard on the basis of said motion, a copy of said Act, attached thereto; the responses of the surviving spouse and heirs Joni and Kathy Jenkins, including their notice of a challenge to the constitutionality of said Act, as applied to this estate; a legal memorandum filed by the Co Executors; the arguments of counsel

at the hearing on said motion, and the entire record in the cause;

Following said hearing, and consideration by the Court of all of the foregoing, the Court made the following findings:

The Court finds that the Act, Title 35, Chapter 6, as amended, is not applicable to this case; what is applicable is the law under which the Court of Appeals wrote its opinion, and the law under which this Court had given its opinion; the reason that it's not applicable is because this Court has previously given its opinion, and that opinion was reversed by the Court of Appeals, and the Supreme Court did not hear the issue; the Court had directed the Co Executors to go ahead, utilizing the Court of Appeals' opinion, to calculate the share of the surviving spouse, and what would be then for the children, who are the other heirs, and this was all done prior to May 15, 2000; the court is therefore of the opinion that the Co–Executors shall proceed, pur-

---

third elective share of the decedent's estate before estate taxes are paid. The surviving spouse would then be liable for one-third of all debts and/or be entitled to receive one-third of all income resulting from any undistributed principal remaining in the estate.

So, for example, under the "fixed-fraction" accounting method, if the estate totaled $300,000 at the decedent's death, the surviving spouse would be entitled to her one-third share, or $100,000 of the gross estate. The residuary heirs would then be entitled to two-thirds of the gross estate, less taxes. Assume, then, that taxes total $100,000, leaving $200,000 in the estate: $100,000 for the surviving spouse's share; and $100,000 for the residuary heirs. Any income earned on this $200,000 would be divided: one-third to the surviving spouse, and two-thirds to the residuary heirs. If the estate earns $15,000, the surviving spouse would receive $5,000 of this income, and the residuary heirs would receive $10,000.

Under the "changing-fraction" accounting method, however, the executors would determine what percentage of the *total undistributed estate* the surviving spouse's share represents after taxes are taken out. In our example, the surviving spouse is entitled to $100,000 of the $300,000 estate. After $100,000 in taxes are paid, $200,000 is left undistributed. The surviving spouse is entitled to $100,000 of the remaining $200,000 in the estate, or one-half of the undistributed estate. The executors would then apply this fractional interest, one-half, to any income or, conversely, to any debts attributed to the estate. In the example, therefore, the surviving spouse would receive 50% of the $15,000 in income, or $7,500, and the residuary heirs would also receive $7,500 in income. *See Jenkins I* at 289, FN8.

suant to previous law, without consideration of the Uniform Principal and [Income] Act, as amended.

The Court therefore directs and instructs the Co-Executors to proceed pursuant to previous law, without consideration of such Act, and the Court further instructs and directs the Co-Executors that once they have done their work of calculating the share of the surviving spouse, if there is any issue about the application of the Uniform Principal and Income Act adopted in Tennessee, said issue shall be between the surviving spouse and the children, and if said surviving spouse or children wish to appeal the Court's ruling, they may do so, but the Co-Executors will follow the directions of this Court.

The Surviving Spouse appeals and presents one issue, as stated in her brief:

Whether the probate court must apply that provision of the TUPIA, as amended, that mandates the application of the changing-fraction method to calculation of the surviving spouse's elective share.[4]

As we have noted above, following this Court's opinion in *Jenkins I*, the Tennessee Legislature amended the TUPIA and adopted the 1997 version of the UPIA in its entirety. The TUPIA sections which have consequences for the case at bar are T.C.A. §§ 35-6-202 and 35-6-602 (2001). Those sections provide, in relevant part:

§ 35-6-202. Distribution to residuary and remainder beneficiaries

(a) Each beneficiary described in § 35-6-201(4) is entitled to receive a portion of the net income equal to the beneficiary's fractional interest in undistributed principal assets, using values as of the distribution date. If a fiduciary makes more than one (1) distribution of assets to beneficiaries to whom this section applies, each beneficiary, including one who does not receive part of the distribution, is entitled, as of each distribution date, to the net income the fiduciary has received after the date of death or terminating event or earlier distribution date but has not distributed as of the current distribution date.

(b) In determining a beneficiary's share of net income, the following rules apply:

(1) *The beneficiary is entitled to receive a portion of the net income equal to the beneficiary's fractional interest in the undistributed principal assets immediately before the distribution date,* including assets that later may be sold to meet principal obligations.

(2) The beneficiary's fractional interest in the undistributed principal assets must be calculated without regard to property specifically given to a beneficiary and property required to pay pecuniary amounts not in trust.

(3) The beneficiary's fractional interest in the undistributed principal assets must be calculated on the basis of the aggregate value of those assets as of the distribution date without reducing the value by any unpaid principal obligation.

(4) The distribution date for purposes of this section may be the date as of which the fiduciary calculates the value of the assets if that date is reasonably near the date on which assets are actually distributed.

§ 35-6-602. Application of act to existing trusts and estates

---

4. Appellees have proposed four issues for review in their brief, but it appears that these issues are merely arguments in favor of affirmance of the chancery court decision. The only issue encompassed by the final order of the chancery court is stated by the surviving spouse.

*This act applies to every trust or decedent's estate existing on or after July 1, 2000,* except as otherwise expressly provided in the will or terms of the trust or in this act.

(emphasis added).

■ The surviving spouse asserts that the clear terms of the TUPIA require that the Act be applied to the estate and that the "changing fraction" method be applied to the income accrued from the date the estate was opened. On the other hand, the appellees assert that to apply the Act in such a manner would alter vested and substantive rights and, therefore, is unconstitutional by virtue of Article 1, Sec. 20, Tennessee Constitution and Article 1, Sec. 10 of the United States Constitution.

■ We begin our analysis with an interpretation of the subject statutes. When interpreting a statute, the role of the Court is to "ascertain and give effect to the legislative intent." *Sharp v. Richardson,* 937 S.W.2d 846, 850 (Tenn.1996). In the absence of ambiguity, legislative intent is derived from the face of a statute, and the Court may not depart from the "natural and ordinary" meaning of the statute's language. *Davis v. Reagan,* 951 S.W.2d 766, 768 (Tenn.1997); *Westland West Community Ass'n. v. Knox County,* 948 S.W.2d 281, 283 (Tenn.1997). Statutes enacted by the legislature are presumed constitutional. *See Vogel v. Wells Fargo Guard Servs.,* 937 S.W.2d 856, 858 (Tenn. 1996). Thus, we must "indulge every presumption and resolve every doubt in favor of constitutionality." *Id.*

■ Our review of the legislative history of the 2000 amendment reveals that the Legislature's primary concern was to give trustees more flexibility in administering trust investments. *See Tennessee Uniform Principal and Interest Act: Hearing on H.B. 1189 Before House Judiciary Comm., 1999 Leg.* (Tenn.1999) (Statement of Tim Amos, Tennessee Banker's Assoc.). We have found no legislative history specifically dealing with the Act's move to a changing-fraction method of calculating income from undistributed principal in trusts or estates. Using the natural and ordinary language, the intent of the legislature is clear and unambiguous that the act is to apply to any existing trust or estate as of July 1, 2000.

Courts in jurisdictions which apply the changing-fraction method of accounting describe the method as producing "the equitable result of allocating growth in the assets of the estate in proportion to all parties' actual interests in the fund which generated the growth." *Estate of Greenfield,* 484 Pa. 141, 398 A.2d 983, 987 (1979). Similarly, these jurisdictions recognize that the changing-fraction method adds to the time spent administering estates:

In an administration of an estate, the residuary will normally contain assets that later will be used or liquidated to pay estate taxes. The assets so used may in the meantime produce income and may ultimately increase or decrease in value prior to liquidation. While in the hands of the executors, they are part of the estate being administered. As soon as property is taken from the residue to meet the estate tax obligation, the residuary is diminished in value and a marital trust correspondingly has a larger fractional share in the aggregate of the estate properties.

*Estate of Palitz,* 70 Misc.2d 136, 331 N.Y.S.2d 929, 933 (N.Y.Sur.Ct.1972).

Notwithstanding the clear language of T.C.A. § 35–6–602, we must still determine the manner in which the Act applies to Mr. Jenkins' estate, and whether it applies retroactively, as the Surviving Spouse argues. The Heirs argue that, since the TUPIA

affects vested substantive rights, it cannot be applied retrospectively.

■■■ Article I, Section 20 of the Tennessee Constitution provides, "That no retrospective law, or law impairing the obligations of contracts, shall be made." Tennessee courts have held this provision to forbid the taking away of a vested right. *See, e.g., Doe v. Sundquist*, 2 S.W.3d 919, 923 (Tenn.1999); *Collier v. Memphis Light, Gas & Water Div.*, 657 S.W.2d 771, 775 (Tenn.Ct.App.1983); *Anderson v. Memphis Housing Authority*, 534 S.W.2d 125, 127 (Tenn.Ct.App.1975). Statutes are presumed to operate prospectively unless the legislature clearly indicates otherwise. *See Nutt v. Champion Int'l. Corp.*, 980 S.W.2d 365 (Tenn.1998); *Pacific E. Corp. v. Gulf Life Holding, Co.*, 902 S.W.2d 946 (Tenn.Ct.App.1995). Every act of the general assembly is presumptively constitutional until condemned by judicial pronouncement. *See Taylor v. State*, 995 S.W.2d 78 (Tenn.1999), *cert. denied sub nom. Gwin v. Tennessee*, 528 U.S. 915, 120 S.Ct. 270, 145 L.Ed.2d 226 (1999). Where there is more than one possible way of interpreting a statute, one of which will make it constitutional, the court must choose the interpretation which will render the act constitutional. *See Davis–Kidd Booksellers v. McWherter*, 866 S.W.2d 520 (Tenn.1993); *Chattanooga v. Harris*, 223 Tenn. 51, 442 S.W.2d 602 (1969).

■■■ The Surviving Spouse argues that when the Tennessee Legislature adopted the 1997 version of the UPIA, it was "filling in a void" in the earlier TUPIA by providing a "procedural mechanism by which the net income of the estate is to be allocated." Therefore, the Surviving Spouse explains, the Heirs could not have a vested interest in the fixed-fraction method of allocation. While we agree that no statutory mechanism existed by which

to allocate income, we cannot say that the Heirs have no vested interest in income earned before July 1, 2000. This Court has held that, "A 'vested right' is one that is absolute, complete and unconditional to the exercise of which no obstacle exists and which is immediate and perfect in itself and not dependent upon a contingency." *Calhoun v. Union Planters Nat'l Bank,* R.D. No. 90986–3, 1987 WL 13834 (Tenn.Ct.App.1987). The record reflects that the estate uses the cash method of accounting. Neither the Surviving Spouse's, nor the Heirs' interest in income generated by the estate's undistributed assets can vest until the income is received by the estate, but when received by the estate the interests of the parties vest. The same would also be true for liabilities the estate may incur.

■■■ It appears significant that the clear language of the statute regarding the applicability of the statute is equally appropriate to trusts and decedents' estates. Trusts are more likely than not to be of long duration, and it is generally true that trusts are established to pay periodic income to the trust beneficiary, sometimes over a long period of time. It simply is not reasonable to assume that the legislature intended that a new method of determining allotment of income should take effect retroactively and necessitate a recalculation of many years of previous distributions of income. Therefore, we hold that the legislature intended for the provisions of T.C.A. § 35–6–202(b)(1) to be applied to income of a trust or decedent's estate accruing only from July 1, 2000.

Accordingly, the order of the trial court is affirmed as it applies to income received prior to July 1, 2000 and is reversed as it applies to income received on and after July 1, 2000. The case is remanded to the trial court for such further proceedings as necessary consistent with this Opinion.

Costs of the appeal are assessed to the Estate of Harold L. Jenkins, deceased.