2006 OK CIV APP 58

Bill PITTMAN and Frank Pittman, Plaintiffs/Appellants,

v.

Larry SAGER and Mary Ellen Sager, Defendants/Appellees,

and

Mike McDonald, in his capacity as Distribution Referee, Defendant.

No. 102,498.

Court of Civil Appeals of Oklahoma, Division No. 3.

April 14, 2006.

Joel R. Hogue, Mullin, Hoard & Brown, L.L.P., Amarillo, TX, for Plaintiffs/Appellants.

Byron K. Linkous, Steven C. Davis, Hartzog, Conger, Cason & Neville, Oklahoma City, OK, for Defendants/Appellees.

Opinion by KENNETH L. BUETTNER, Chief Judge:

¶ 1 Plaintiffs/Appellants Bill Pittman and Frank Pittman (the Pittmans) appeal from summary judgment entered in favor of Defendants/Appellees Larry Sager and Mary Ellen Sager (the Sagers). The parties sought a declaration of their rights to certain settlement and judgment proceeds attributable to oil and gas production from certain real property. The Sagers own the surface and. minerals of the real property. The Sagers purchased the surface from W.K. and Ardath Pittman, who reserved a life estate in the mineral rights. The Sagers received the remainder interest in the mineral estate following the deaths of W.K. and Ardath Pittman. The Pittmans are the heirs of the life tenants. They asserted they were entitled to the settlement and judgment proceeds attributable to minerals severed during the life estate. The trial court held the proceeds at issue were first ascertained and became collectible after the death of the last life tenant and that, pursuant to both the terms of the reservation clause and the provisions of the Uniform Principle and Income Act, the Pittmans had no right to those proceeds. We affirm.

¶ 2 The facts of this case are not disputed. W.K. and Ardath Pittman ("Life Tenants") owned the surface and mineral rights to certain real property.[1] Life Tenants conveyed the real property by warranty deed to the Sagers September 4, 1973, but they reserved a life estate in the mineral rights. Life Tenants obtained a default judgment against the Sagers January 8, 1985, which reformed the life estate reservation clause in the 1973 warranty deed.[2] The reformed reservation clause stated:

Reserving unto grantors, W.K. Pittman and Ardath Pittman, a life estate for and during their respective lives, and for and

their right, title, and interest in the oil, gas and other minerals and mineral rights in and under said real estate together with the right of ingress and egress for exploration, development, production and storage of such minerals, and upon the death of the said W.K. Pittman and Ardath Pittman, said minerals to vest in the then owner or owners of the surface of the captioned real estate.

---

1. Described as N/2 of NE/4, and S/2 of SE/4 of Sec. 18–3N–22E; the NE/4 and the N/2 of SE/4 of Sec. 19–3N–22E; and the W/2 and NE/4 of Sec. 20–3N–22E; (of the Cimarron Meridian, Beaver County, Oklahoma).

2. The reservation clause in the 1973 warranty deed provided:
   Reserving unto the sellers, W.K. Pittman and Ardath Pittman, a life estate in and to all of

during the life of the survivor, all of their right, title and interest in and under said described real estate, together with the right to lease all of such oil, gas and other minerals for any length of time and further reserving unto themselves, or the survivor thereof, for and during their lifetimes, the right to collect and receive all bonuses, rents, profits and proceeds derived from the leasing and production of all oil, gas and other minerals thereunder, together with the right of ingress and egress, upon the death of the survivor of the grantors, W.K. Pittman and Ardath Pittman, such reservation to expire and all of said oil, gas and other minerals and mineral rights herein reserved to immediately and automatically vest in the grantees herein, namely, Larry Sager and Mary Ellen Sager as joint tenants with full rights of survivorship, their successors, representatives and assigns.

W.K. Pittman survived Ardath Pittman. W.K. Pittman died October 6, 1996. Bill and Frank Pittman are the heirs of W.K. Pittman.

¶ 3 In 1995, a class action lawsuit was filed in Beaver County (later transferred to Texas County), seeking to recover underpaid oil and gas royalties owed for production from various properties, including the real property at issue in this case, from 1983 forward.[3] Settlement agreements were reached in 1999 and 2000 between the class plaintiffs and Chase Manhattan Bank, Union Pacific Resources Company, Questar, and other defendants. Then, following trial, a judgment was entered in favor of the class plaintiffs against Kaiser–Francis Oil Company in November 2001.[4] The settlement proceeds attributable to the real property at issue here amounted to $73,832.73. Of that amount, $73,030 was attributable to production during the life estate.

¶ 4 In their Petition, the Pittmans sought a declaratory judgment that, as heirs of Life Tenants, they were entitled to the settlement and judgment proceeds attributable to production during the life estate. The Sagers counterclaimed for a judgment declaring that all settlement and judgment proceeds resulting from the class action were first ascertained and collectible after the life estate ended and therefore belonged to the Sagers.

¶ 5 After hearing on the parties' motions for summary judgment, the trial court issued its Order that, based on the undisputed facts, the Sagers were entitled to judgment. The trial court concluded that the life estate reservation clause provided that all rights the Pittmans had to *collect and receive* income (regardless of the time of production) ended on the date the life estate ended. The court concluded that because all the settlement and judgment proceeds arising out of the class action were first known, ascertained, determined, and receivable after the end of the life estate, the Pittmans had no right to the proceeds of the class action attributable to the real property here.

¶ 6 In addition to the express language of the reservation clause, the trial court also based its decision on the provisions of the Uniform Principle and Income Act (UPIA or "the Act").[5] The trial court found that the UPIA governed the income interest reserved by the Life Tenants. The trial court rejected the Pittmans' claim that application of the UPIA to interests created before its enactment was unconstitutional.[6] The trial court concluded the current UPIA applied to all

---

3. The opinion of the Oklahoma Court of Civil Appeals, which affirmed the class action judgment, indicates the jury found Kaiser–Francis Oil Company had underpaid royalties by charging improper fees which reduced the royalties paid. See Note 4, below.

4. The judgment against Kaiser–Francis Company, which awarded total damages of over $73 million, was affirmed August 22, 2003 by the Oklahoma Court of Civil Appeals in Case No. 97,117 (cert.denied). The record does not indicate what amount of the judgment proceeds is attributable to the real property in this case, and what portion of that is due to production during the life estate.

5. The UPIA has been adopted in Oklahoma and is found at 60 O.S.2001 §§ 175.01 *et seq.*

6. The UPIA was first enacted in 1931 and was codified at 60 O.S.1941 §§ 175.1 *et seq.* A subsequent version was enacted in 1997. The trial court relied on the 1997 version (adopted and effective in Oklahoma November 1, 1998) in deciding this case.

proceeds from the class action related to the real property in this case.

¶ 7 The trial court further found that under 60 O.S.2001 § 175.301, the income interest of Life Tenants terminated October 5, 1996, the day before W.K. Pittman's death. The trial court found that 60 O.S.2001 § 175.302 and § 175.303 provide that the Sagers are entitled to all income actually received after October 5, 1996, regardless of when that income accrued.

¶ 8 The trial court also held that none of the class action proceeds even accrued until after the deaths of Life Tenants, because as to the income at issue in that case, neither the right to receive it nor its amount could be determined with reasonable accuracy until after the class action proceeded to settlement and judgment. Accordingly, the trial court held that all income attributable to the real property in this case must necessarily have not accrued until after the expiration of Life Tenants' right to collect and receive income.

¶ 9 The trial court entered summary judgment December 21, 2004. By Order filed August 3, 2004, the trial court granted the Pittmans' motion to supplement their statement of undisputed facts, but denied the Pittmans' motion for new trial. The court directed that the supplemental material be considered part of the record, but the court found that material did not change its summary judgment decision.

■■■ ¶ 10 Because there is no dispute of fact, we address the trial court's finding that the Sagers were entitled to judgment as a matter of law.[7] First, we agree with the trial

court that the reservation clause expressly terminates all rights to collect and receive money related to the mineral estate on the date of the final Life Tenant's death:

> reserving unto themselves, or the survivor thereof, *for and during their lifetimes, the right to collect and receive* all bonuses, rents, profits and proceeds derived from the leasing and production of all oil, gas and other minerals thereunder ... *upon the death of the survivor* of the grantors, W.K. Pittman and Ardath Pittman, *such reservation to expire and all of said* oil, gas and other minerals and *mineral rights herein reserved to immediately and automatically vest in the* (Sagers).

All of the mineral rights reserved, including the right to collect and receive proceeds from minerals under the real property, expired on the date of W.K. Pittman's death, and also on that date those rights immediately vested in the Sagers. As noted, that date was before the class action settlement and judgment. To allow the Pittmans to exercise the reserved mineral rights after those rights had expired would require ignoring the unambiguous language of the reservation clause.[8] Unambiguous terms in a deed may not be interpreted by consideration of extrinsic evidence. *Karaker v. Unknown Heirs, Executors, Administrators, Devisees, Trustees and Assigns of Karaker,* 1966 OK 249, 434 P.2d 282, 284.

¶ 11 We next address the trial court's application of the UPIA to the undisputed facts of this case. One of the purposes of the UPIA is to answer the question "when an income interest ends, who gets the income

---

7. Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 12 O.S. 2001, Ch. 2, App.1. Summary judgment is appropriate where the record establishes no substantial controversy of material fact and the prevailing party is entitled to judgment as a matter of law. *Brown v. Alliance Real Estate Group,* 1999 OK 7, 976 P.2d 1043, 1045. Summary judgment is not proper where reasonable minds could draw different inferences or conclusions from the undisputed facts. *Id.* Further, we must review the evidence in the light most favorable to the party opposing summary judgment. *Vance v. Fed. Natl. Mortg. Assn.,* 1999 OK 73, 988 P.2d 1275.

8. For this reason we disagree with the Pittmans' claim that the 1985 reformed reservation clause

shows the parties' intent not to be bound by the result required by the UPIA, discussed below. We agree with the Pittmans that the reservation clause shows an intent to disregard the common law rule that, absent an agreement providing otherwise, royalties are principle and, therefore, go to the remainderman. See V. Woerner, *Rights of Tenant for Life or Years and Remaindermen inter se in Royalties or Rents Under Oil, Gas, Coal, or Other Mineral Lease,* 18 A.L.R.2d 98, § 2 (1951). However, nothing in the reformed reservation clause shows Life Tenants intended that the survivor's estate would collect or receive mineral income which was undetermined at the death of W.K. Pittman.

that has been received but not distributed, or that is due but not yet collected, or that has accrued but is not yet due?" Unif. Principal and Income Act 1997, Prefatory Note. The life estate reserved by Life Tenants gave them an income interest. "Income interest" is defined in the UPIA as "the right of an income beneficiary to receive all or part of net income, whether the terms of the trust require it to be distributed or authorize it to be distributed in the trustee's discretion." 60 O.S.2001 § 175.102(6). As noted by the trial court, the Act provides that an "income interest" ends on the day before an income beneficiary dies. 60 O.S.2001 § 175.301(D).

¶ 12 The UPIA provides express direction for apportionment of income when an income interest ends. When an income interest ends, the trustee shall pay to the income beneficiary's estate "the beneficiary's share of the undistributed income . . ." 60 O.S.2001 § 175.303(B).

¶ 13 The definition of "undistributed income" in section 175.303 is key to the outcome in this case: " 'undistributed income' means net income *received before the date on which an income interest ends. The term does not include an item of income or expense that is due or accrued.* . . ." 60 O.S. 2001 § 175.303(A) (emphasis added). The Prefatory Note in the 1997 UPIA explains that the changed definition of undistributed income is intentional, and it expressly excludes accrued but not received income from the definition of undistributed income:

> **Clarifications and changes in existing rules.** A number of matters provided for in the prior Acts have been changed or clarified in this revision, including the following:
>
> (1) An income beneficiary's estate will be entitled to receive only net income actually received by a trust before the beneficiary's death and not items of accrued income. Section 303.

Under the 1997 revision, accrued but not received income is not "undistributed income" and therefore does not go to the income beneficiary, but instead goes to the holder of the remainder interest—here, the Sagers.

¶ 14 The determination of whether income beneficiaries are entitled to oil and gas royalties depends on application of the UPIA. See *Rush v. Matter of Appointment of Trustee*, 1995 OK CIV APP 71, 897 P.2d 1150, 1153; *Kumberg v. Kumberg*, 5 Kan.App.2d 640, 623 P.2d 510, 512 (1980); 18 A.L.R.2d 98, § 10(c), *supra;* 60 O.S.2001 § 175.411. The Act is therefore applicable to the determination of this case. Additionally, the version of the Act in effect at the time the settlement and judgment proceeds were determined is applicable. 60 O.S.2001 § 175.602;[9] *In re Estate of Harold L. Jenkins,* 97 S.W.3d 126 (Tenn.App.2002)(analyzed Section 602 as affected by Tennessee constitutional provision that no law may impair vested rights; determined that right to income for UPIA purposes does not vest until it is received by the estate, and held that the UPIA applies to income accruing after the effective date of the revised UPIA). Here, as noted above, the settlement and judgment proceeds did not accrue until after November 1, 1998, the date the Act went into effect in Oklahoma.

¶ 15 The undisputed facts show the Sagers were entitled to judgment as a matter of law, and summary judgment in their favor is therefore AFFIRMED.

MITCHELL, P.J., and ADAMS, J., concur.

---

9. That section provides that the 1997 revision of the UPIA "applies to every trust or decedent's estate existing on the effective date of this act except as otherwise expressly provided in the will or terms of the trust or in this act." Here, the instrument under which the Pittmans made their claim, and W.K. Pittman's estate both existed on the effective date of the current Act. The fund over which the Distribution Referee acts as trustee was created after the date of the current Act.