OPINION
 

 By the Court, Gibbons, J.:
 

 In this appeal, we examine whether a district court may consider a parent’s immigration status and its derivative effects as a factor
 
 *699
 
 in determining a child’s best interests. Appellant Araceli Perez Rico contends that the district court (1) abused its discretion by granting respondent Jose Rodriguez custody of the children based, in part, upon an erroneous interpretation of a repealed immigration statute; and (2) violated her due process and equal protection rights when it used her immigration status in making the child custody determination. We are not persuaded that the district court abused its discretion in making its custody determination or that appellant Rico’s constitutional rights were violated. Additionally, although the district court improperly considered respondent’s erroneous explanation of a repealed immigration statute, this error was harmless. We therefore affirm the district court’s order.
 

 FACTS
 

 Rico and Rodriguez are the unmarried parents of two minor children: M.P., born March 26, 1993; and J.P., born April 25, 1995. Rico, M.P., and J.P. are citizens of Mexico. From 1996 to 2003, Rico maintained primary physical custody of the children. In 2003, Rico and the children illegally emigrated from Mexico to Las Vegas. After moving to Las Vegas, M.P. and J.P. telephoned Rodriguez to ask if they could live with him. That summer, Rodriguez filed a petition in district court for determination of paternity, custody, support, and visitation. At the time of the proceedings, Rodriguez was a citizen of Mexico with permanent legal residency in the United States and was living with his wife in the State of Washington.
 

 The district court conducted an evidentiary hearing concerning Rodriguez’s petition. After hearing the parties’ arguments, the district court concluded that it needed more information before making a custodial determination. The district court was mainly concerned with the parties’ living conditions and with Rodriguez’s interaction with the children. Consequently, the district court issued an order requesting independent studies of Rico’s and Rodriguez’s living conditions and directing the parties to engage in mediation.
 

 In Washington, Mary J. Hatzenbeler, a state social worker, studied Rodriguez’s living environment and interviewed the children. Hatzenbeler found that Rodriguez’s home was modest but adequate for the children’s needs. While interviewing the children, Hatzen-beler discovered that over the past six years, M.P. and J.P. were often placed in their maternal grandmother’s care in Mexico. These circumstances required M.P. to assume a parental role for J.P. Further, Hatzenbeler had “serious concerns about the lack of medical attention [for a birth defect] and education provided to [J.P.].” She was primarily concerned with J.P.’s speech impediment, lack of formal education, and inability even to say the
 
 *700
 
 alphabet. Overall, she noted that the children were happy and comfortable and that Rodriguez and his wife treated them with love and respect.
 

 In Nevada, Ingrid Sanchez, a Nevada social worker, appraised Rico’s living conditions and interviewed the children. In interviewing M.R and J.R, Sanchez determined that for as long as six or seven years, the children lived primarily with Rico’s mother in Mexico. Sanchez also found that Rico placed a majority of the parenting responsibilities of J.R onto M.P. As a consequence, M.P. was responsible for dressing, feeding, and looking out for J.P. In addition, Sanchez observed that J.P. suffered from a speech impediment, which affected his ability to interact with others and learn. She also concluded that Rico was unable to provide the medical care necessary to correct J.P.’s physical condition. Further, she reported that eight individuals, including Rico and the children, were living in a three-bedroom mobile home owned by Rico’s boyfriend. Notwithstanding the negative elements of the living environment, Sanchez advised the court that Rico could provide a suitable home for her children.
 

 Thereafter, the district court held a second hearing on this matter. During this hearing, the district court expressed deep concern about J.P.’s medical and speech difficulties, M.P.’s role as J.P.’s substitute parent, Rico’s immigration status, the availability of medical insurance for the children, and the stability of the children’s schooling.
 

 Subsequently, the district court issued an order stating that joint legal and shared physical custody would serve the children’s best interests. Additionally, the court concluded it was in the children’s best interests to grant Rodriguez primary physical custody based on Rodriguez’s employment, his ability to provide medical insurance and stable schooling, and Rico’s immigration status. In particular, the district court noted Rodriguez’s ability to lawfully allow both minor children to immigrate and obtain the status of United States citizen. Rico was awarded visitation.
 

 Before filing the present appeal, Rico moved the district court for reconsideration of its custody determination. After a hearing, the district court denied the motion on the ground that Rico’s immigration status was not the primary factor used in awarding custody.
 
 [1]
 
 Specifically, the district court stated that the element of immigration was only one part of the previous decision and that
 
 *701
 
 based on facts and circumstances beyond Rico’s immigration status, the court made the decision in the children’s best interests. This timely appeal followed.
 

 DISCUSSION
 

 Rico argues that the district court abused its discretion by considering immigration status and granting Rodriguez custody of the children based, in part, upon an erroneous interpretation of federal law. We disagree.
 

 Best interests of the children
 

 The district court has broad discretion in making child custody determinations, and we will not disturb the district court’s custody determination “absent a clear abuse of discretion.”
 
 [2]
 
 This court, however, must also be satisfied that the district court’s determination was made for appropriate reasons.
 
 [3]
 
 The district court’s factual determinations will not be set aside if supported by substantial evidence.
 
 [4]
 

 Under NRS 125.480(1), “[i]n determining custody of a minor child ... , the sole consideration of the court is the best interest of the child.” In determining the child’s best interests, the court may consider several factors, including which parent is more likely to allow the child to have a “continuing relationship with the noncustodial parent.”
 
 [5]
 

 We have not previously addressed the issue of considering a parent’s immigration status as a factor in determining the child’s best interests for custody determination purposes. Nothing suggests, however, that a district court cannot exercise its broad discretion and consider a parent’s immigration status in connection with the child’s best interests.
 
 [6]
 
 Rather, as with all balancing tests, the district court must weigh each factor that may affect the consequences of placement. Since the child’s best interests are paramount in custody matters, we conclude that a district court has the discretion to consider a parent’s immigration status and its derivative effects as a factor in determining custody.
 
 [7]
 

 
 *702
 
 Here, the parents’ immigration status was merely one factor the district court considered in determining the children’s best interests. The district court also considered J.P.’s medical and speech difficulties, M.P.’s responsibility to care for J.P., the time the children were left with Rico’s mother in Mexico, Rodriguez’s ability to provide medical insurance and stable schooling for the children, Rico’s and Rodriguez’s living conditions, Rico’s inability to provide a healthy contact between Rodriguez and the children, and Rodriguez’s employment.
 

 In addition, the district court considered the immigration status and its derivative effects for both parents. Apparently, in attempting to understand these effects, the district court erroneously interpreted a federal immigration law by mistakenly relying on a memorandum of law prepared by Rodriguez’s counsel. The memorandum concluded that Rodriguez could obtain United States citizenship on behalf of his children if awarded physical custody. In reality, Rodriguez, as a lawful permanent resident, would initially only have the ability to file the paperwork necessary to apply for legal permanent residency for the children regardless of physical custody.
 
 [8]
 
 Nevertheless, the district court clarified its ruling regarding its reliance on the parties’ immigration status, when denying Rico’s motion for reconsideration, by explaining that immigration was only one consideration in deciding custody.
 
 [9]
 

 Balancing all these factors and relying on the reports provided by Hatzenbeler and Sanchez, the district court granted Rodriguez primary physical custody based upon the children’s best interests. Substantial evidence exists in the record to support the district court’s decision to award Rodriguez custody.
 

 Constitutional challenge
 

 Rico also argues that the district court violated her equal protection and due process rights by considering her immigration status in making the custody determination.
 

 This court reviews constitutional challenges de novo.
 
 [10]
 
 The rights to equal protection and due process of law are guaranteed by the Fourteenth Amendment of the United States Constitution and
 
 *703
 
 Article 1, Section 8(5) and Article 4, Section 21 of the Nevada Constitution. In particular, the Fourteenth Amendment states that no State shall “deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.”
 

 Equal protection
 

 The threshold question in equal protection analysis is whether a statute effectuates dissimilar treatment of similarly situated persons.
 
 [11]
 
 In analyzing alleged equal protection violations, the level of scrutiny that applies varies according to the type of classification created.
 
 [12]
 
 Where a case presents no judicially recognized suspect class or fundamental right that would warrant intervention under a standard of strict scrutiny or where it presents no quasi-suspect class such as sex, illegitimates or the poor that would warrant application of intermediate level scrutiny, we analyze the challenged law under the rational basis test.
 
 [13]
 
 A statute meets rational basis review so long as it is reasonably related to a legitimate government interest.
 
 [14]
 

 But where a law contains no classification or a neutral classification and is applied evenhandedly, it may nevertheless be challenged as in reality constituting a device designed to impose different burdens on different classes of persons.
 
 [15]
 

 In this case, the statute at issue, NRS 125.480, is facially neutral. It creates no classifications and sets forth that child custody determinations should be based solely on “the best interest of die child.” The policy behind NRS 125.480 is to ensure that minor children have frequent associations and a continuing relationship with both parents after the parents have become separated or have dissolved their marriage and to encourage the parents to share the rights and responsibilities of child rearing.
 
 [16]
 

 
 *704
 
 Additionally, Rico fails to assert a proper “as applied” challenge to the statute. Rico presents no evidence of how the application of NRS 125.480 is designed to purposefully discriminate against parents based on their immigration status. Child custody determinations are by necessity made on a case-by-case basis. In this case, the district court considered the parents’ immigration status solely to determine the children’s best interests. Furthermore, there is nothing to indicate that the ultimate decision of the district court turned on Rico’s immigration status. The district court’s consideration of both parents’ immigration status and its derívate effects on the children was one of several factors weighed in reaching the custody determination. Rico has failed to demonstrate how the statute discriminates against her in the context of the district court’s child custody determination.
 

 Due process
 

 Embedded within the Fourteenth Amendment is a substantive component that “ ‘provides heightened protection against government interference with certain fundamental rights and liberty interests.’ ”
 
 [17]
 
 The United States Supreme Court has recognized several fundamental interests including “the interest of parents in the care, custody, and control of their children.”
 
 [18]
 
 These fundamental interests apply to individuals regardless of their immigration status.
 
 [19]
 
 Furthermore, the Equal Protection Clause of the Fourteenth Amendment prohibits discrimination based “on alienage, . . . nationality or race” that does not meet strict judicial scrutiny.
 
 [20]
 

 In a custody dispute between two fit parents, the fundamental constitutional right to the care and custody of the children is equal.
 
 [21]
 
 Since the fundamental interests of both parties in raising and educating their children are identical, the dispute in such cases can be resolved best, if not solely, by applying the best interest of the child standard.
 
 [22]
 
 In
 
 McDermott
 
 v. Dougherty,
 
 [23]
 
 the Maryland
 
 *705
 
 Court of Appeals explained that the “best interests of the child standard’ ’ applies when fit parents seek custody, and
 

 each fit parent’s constitutional right neutralizes the other parent’s constitutional right, leaving, generally, the best interests of the child as the
 
 sole standard
 
 to apply to these types of custody decisions. Thus, in evaluating each parent’s request for custody, the parents commence as presumptive equals and a trial court undertakes a balancing of each parent’s relative merits to serve as the primary custodial parent; the child’s best interests tips the scale in favor of an award of custody to one parent or the other.
 
 [24]
 

 Accordingly, Rico and Rodriguez stood on equal footing before the district court when asserting their right to custody of their children. The district court necessarily considered all relevant factors when determining the children’s best interests, including the parties’ immigration status. After balancing all the factors, including, but not limited to, Rico’s immigration status, the district court determined that it was in the children’s best interests to live with Rodriguez. Nothing in the record indicates that the district court’s ultimate decision turned primarily on Rico’s immigration status. Thus, the district court did not violate Rico’s due process rights in considering the effect of her immigration status on her children.
 

 Although we recognize that Rico is entitled to due process and equal protection, she has simply not demonstrated that the district court’s consideration of her immigration status violated her constitutional rights or was a primary factor in the determination of her children’s best interests. Thus, we discern no constitutional violation here.
 

 CONCLUSION
 

 Nevada’s standard for making custodial determinations is the child’s best interests. In evaluating the child’s best interests, the district court has the discretion to consider a parent’s immigration status to determine its derivative effects on the children. Here, the district court did not abuse its discretion in considering Rico’s immigration status as a factor in awarding Rodriguez custody of M.R and J.R pursuant to the best interests of the children. Further, nothing in the record indicates that the district court inappropriately relied on Rico’s alienage in violation of her equal protection or due process rights. Therefore, we affirm the district court’s order.
 

 Rose and Hardesty, JJ., concur.
 

 [1]
 

 Ordinarily, an order denying a motion for reconsideration is not substantively appealable.
 
 See Alvis v. State, Gaming Control Bd.,
 
 99 Nev. 184, 660 P.2d 980 (1983). Accordingly, this appeal is taken from the November 6, 2003, order. Nevertheless, as the order denying reconsideration was entered before the appeal was taken, we may consider the order denying reconsideration to the extent it clarified the November 6 order. NRAP 4(a)(1).
 

 [2]
 

 Primm
 
 v.
 
 Lopes,
 
 109 Nev. 502, 504, 853 P.2d 103, 104 (1993).
 

 [3]
 

 Sims v. Sims,
 
 109 Nev. 1146, 1148, 865 P.2d 328, 330 (1993).
 

 [4]
 

 Primm,
 
 109 Nev. at 506, 853 P.2d at 105.
 

 [5]
 

 NRS 125.480(3)(a).
 

 [6]
 

 See In re Dependency of J.B.S.,
 
 863 P.2d 1344, 1349 (Wash. 1993);
 
 cf.
 
 NRS 125.480(1);
 
 Sims,
 
 109 Nev. at 1148, 865 P.2d at 330.
 

 [7]
 

 In re Dependency of J.B.S.,
 
 863 P.2d at 1349;
 
 see Sims,
 
 109 Nev. at 1148, 865 P.2d at 330.
 

 [8]
 

 8 U.S.C. § 1153(a)(2) (2000);
 
 id.
 
 § 1101(b)(1)(C).
 

 [9]
 

 To the extent that the district court relied on the erroneous legal memorandum, the error was harmless. NRCP 61.
 

 [10]
 

 West v. State,
 
 119 Nev. 410, 419, 75 P.3d 808, 814 (2003).
 

 [11]
 

 Allen v. State, Pub. Emp. Ret. Bd.,
 
 100 Nev. 130, 135, 676 P.2d 792, 795 (1984).
 

 [12]
 

 Tarango
 
 v.
 
 SIIS,
 
 117 Nev. 444, 454, 25 P.3d 175, 182 (2001).
 

 [13]
 

 Allen,
 
 100 Nev. at 136, 676 P.2d at 795.
 

 [14]
 

 Tarango,
 
 117 Nev. at 455, 25 P.3d at 182.
 

 [15]
 

 Phelps v. Phelps,
 
 446 S.E.2d 17, 21 (N.C. 1994) (holding that custody determination statute creates no classification of an older parent, either on its face or in its application).
 

 [16]
 

 NRS 125.480(3)(a).
 

 [17]
 

 Troxel v. Granville,
 
 530 U.S. 57, 65 (2000) (plurality opinion) (quoting
 
 Washington v. Glucksberg,
 
 521 U.S. 702, 720 (1997)).
 

 [18]
 

 Id.
 

 [19]
 

 Plyer
 
 v.
 
 Doe,
 
 457 U.S. 202, 210 (1982) (stating that an individual is a “person” under the Fourteenth Amendment regardless of immigration status).
 

 [20]
 

 Graham v. Richardson,
 
 403 U.S. 365, 372 (1971) (footnote omitted).
 

 [21]
 

 See McDermott
 
 v.
 
 Dougherty,
 
 869 A.2d 751, 770 (Md. 2004).
 

 [22]
 

 Id.
 
 at 771.
 

 [23]
 

 869 A.2d at 770.
 

 [24]
 

 Id.
 
 at 770.