OPINION

Per Curiam:

In this appeal, we examine a question of first impression under Nevada law: whether a special trustee’s power, under NRS 164.795, to adjust amounts of trust income and principal distributed to a trust income beneficiary and the trust corpus may be exercised with respect to principal and income accrued before the special trustee’s appointment. Because the power to adjust is a corrective power, we conclude that, at a minimum, a special trustee may adjust between principal and income accrued in the year immediately preceding the special trustee’s appointment. Because under NRS 164.725(7) the beneficiary challenging the propriety of any proposed adjustment bears the burden of demonstrating that the trustee did not appropriately comply with the requirements set forth in NRS 164.795(1) and (2), we conclude that the district court in this case did not hold the challenging beneficiary to his appropriate burden. Accordingly, we remand this matter to the district court for further proceedings.

FACTS AND PROCEDURAL HISTORY

The Orpheus Trust is a nontestamentary trust domiciled in Nevada. It is one of several successor trusts to the historic John Paul Getty Family Trust created in California in 1934. Trustee Gordon Getty is the sole income beneficiary of the trust and controls 60 percent of the trustee votes. Respondent Andrew Getty, Gordon’s son, is one of the four contingent remainder beneficiaries of the trust. Andrew is also the president and shareholder of A. Rork Investments, Inc., which is a cotrustee of the Orpheus Trust and controls 10 percent of the trustee votes.
Generally, the trustees of the Orpheus Trust are bound by the standards of the Uniform Prudent Investor Act, which Nevada adopted in 2003. Under the Prudent Investor Act, a trustee must impartially manage a trust in accordance with the standards of a *173 prudent investor and may invest in a wide variety of property and investments.[1] Traditionally, any income from these investments, such as interest or rents, would be paid to the income beneficiary, while any appreciation in principal would revert to the trust corpus for the benefit of the remainder beneficiaries. However, in 2003, the Legislature also enacted NRS 164.795, a provision of the Uniform Principal and Income Act, which provides that if a trustee is unable to otherwise comply with the statutory mandate that a trustee impartially administer a trust, the trustee may adjust between the amounts of income and principal distributed to the income beneficiary and the trust corpus. A primary purpose of this statute is to allow trustees to invest for total portfolio return and to take advantage of more lucrative investment opportunities that may not provide sufficient traditional trust income. Trustees who are also trust beneficiaries may not exercise the power to adjust, but they may seek appointment of a disinterested special trustee to do so.[2]
In November 2004, over Andrew’s objections, the trustees of the Orpheus Trust petitioned the district court to appoint a special trustee to adjust between principal and income. The district court appointed appellant Whittier Trust Company as special trustee in February 2005. In September 2005, Whittier filed a petition for approval of an adjustment between principal and income for the 2004 trust year. The petition indicated that, in 2004, the trust experienced a net return of 14.77 percent of the fair market value of trust assets, while income payable to Gordon amounted to only 2.59 percent of the trust assets. Therefore, Whittier proposed that Gordon receive a net adjustment of 1.20 percent of the fair market value of the trust assets.
Andrew objected to the adjustment, arguing that Whittier could not make a “retroactive” adjustment between principal and income for 2004. After hearing arguments, the district court denied Whittier’s petition, reasoning that Whittier could only adjust between principal and income accrued from its date of appointment. In a subsequent order denying Whittier’s motion for reconsideration, the district court also determined that Whittier did not comply with all requirements of NRS 164.795(1) and (2) in analyzing the proposed adjustment. Whittier has appealed.
On appeal, Whittier primarily contends that the proposed adjustment between principal and income accrued during 2004 was not barred as a “retroactive” adjustment. Whittier also argues that it appropriately analyzed the propriety of the adjustment using the factors set forth in NRS 164.795(2) in recommending the adjustment.

*174
DISCUSSION

In 2003, the Nevada Legislature enacted certain provisions of the Uniform Principal and Income Act, which govern the administration of trusts. One of these provisions, NRS 164.795(1), enables trustees to “adjust” between the amounts of trust principal and income distributed to the income beneficiary and the trust corpus. This provision relieved trustees of their traditional obligation to devote a minimum threshold of trust assets to income-producing investments for the benefit of the trust income beneficiary. Instead, under this new regime, trustees are free to invest for total return, and then correct any unfair effect this may have on income paid to the income beneficiary, or the value of the trust corpus reserved for the remainder beneficiary. However, as indicated above, trustees who are also trust beneficiaries may not exercise the power to adjust and must seek appointment of a disinterested trustee to do so.
Due to the corrective nature of the power to adjust, and the fact that trustees need not formally adopt any new investment strategy before seeking to exercise the power to adjust, we initially conclude that, at a minimum, a special trustee may adjust between principal and income accrued in the year immediately preceding its appointment. Thus, because the district court appointed Whittier as special trustee in early 2005, and Whittier sought an adjustment for the immediately preceding year, we determine that the proposed adjustment was not barred as a “retroactive” adjustment. Also, because the district court did not hold Andrew to his appropriate burden of proof in challenging Whittier’s analysis of the adjustment, we remand this matter to the district court for a determination of whether Whittier appropriately analyzed the proposed adjustment using the factors set forth in NRS 164.795(2).

Standard of review

“Statutory interpretation is a question of law which this court reviews de novo.”[3] When the language of a statute is unambiguous, courts are not permitted to look beyond the statute itself when determining its meaning.[4] However, when “the [Ljegislature has failed to address a matter or . . . addressed it with imperfect clarity, [it becomes the responsibility of this court] to discern the law.”[5] Similarly, when a statute is susceptible to more than one reasonable but inconsistent interpretation, the statute is ambiguous, *175 and this court will resort to statutory interpretation in order to discern the intent of the Legislature.[6]
“When construing an ambiguous statute, legislative intent is controlling, and we look to legislative history for guidance.”[7] In addition, this court will consider a statute’s multiple legislative provisions as a whole and may use the general subject matter and policy of the act as an interpretative aid.[8] This court must also interpret the statute “in light of the policy and spirit of the law, and the interpretation should avoid absurd results.’ ’[9] Finally, this court will resolve any doubt as to the Legislature’s intent in favor of what is reasonable.[10]

Power to correctively adjust principal and income pursuant to NRS 164.795

A trustee is generally bound by a number of statutory guidelines when administering a trust. First, a trustee must act in accordance with the standards of a prudent investor, as defined in the Uniform Prudent Investor Act, which Nevada adopted in 2003.[11] This act provides that a trustee may invest in a wide variety of property and investments and must evaluate these investments “not in isolation but in the context of the trust portfolio as a whole and as part of an overall strategy of investment having objectives for risk and return reasonably suited to the trust.”[12] When a trust has two or more beneficiaries, NRS 164.720 further dictates that a prudent investor must also “act impartially in investing and managing the trust property, taking into account any differing interests of the beneficiaries.”[13] Any exercise of a discretionary power must also be impartial and “based on what is fair and reasonable to all the beneficiaries, except to the extent that the terms of the trust or the will clearly manifest an intention that the fiduciary shall or may favor one or more of the beneficiaries.”[14]
In addition to this impartiality requirement, trust management principles traditionally required a trustee to devote a portion of *176 trust principal to income-producing investments for the benefit of the trust income beneficiary.[15] Remaining assets could be placed in other nonincome-producing investments, such as real estate holdings, for the benefit of the remainder beneficiary. However, in 2003, Nevada adopted certain provisions of the 1997 Uniform Principal and Income Act (Principal and Income Act).[16] Among these provisions, NRS 164.795(1) establishes that
[a] trustee may adjust between principal and income to the extent he considers necessary if he invests and manages trust assets as a prudent investor, the terms of the trust describe the amount that may or must be distributed to a beneficiary by referring to the trust’s income, and he determines . . . that he is unable to comply with subsection 2 of NRS 164.720.
Therefore, NRS 164.795(1) essentially provides that if a trustee is otherwise unable to impartially and fairly treat both principal and income beneficiaries, the trustee may make an adjustment between distributions of principal and income to trust beneficiaries. Because NRS 164.795(3)(g) prohibits trustees who are also trust beneficiaries from making an adjustment between principal and income, a special trustee must be appointed to make an adjustment when all trustees are also trust beneficiaries.[17]
The comments to the Principal and Income Act establish that the primary purpose of this adjustment provision is to free trustees from the traditional obligation to invest in a minimum threshold of income-producing assets and to “enable a trustee to select investments using the standards of a prudent investor without having to realize a particular portion of the portfolio’s total return in the form of traditional trust accounting income, such as interest, dividends and rents.”[18] This purpose was reiterated by Frank Daykin, a Commissioner from the National Conference of Commissioners on Uniform State Laws, who testified before the Assembly Committee on Commerce and Labor that
[the purpose of NRS 164.795] is to permit adjustments between principal and income in order to take advantage of investments which may yield a substantial appreciation of principal while yielding relatively little income in the conventional *177 sense, or, conversely, an investment which yields a relatively high conventional income might yield a disproportionately low possibility of appreciation principal. The trustee may take those factors into account. He may make the adjustment between principal and income so that each class, the income beneficiary and the remainder beneficiary, . . . are fairly treated.[19]
In this case, the trustees of the Orpheus Trust sought to have Whittier appointed as a special trustee pursuant to NRS 164.795(4) in November 2004. Several months after Whittier’s appointment in February 2005, Whittier submitted a proposed adjustment between principal and income accrued during 2004 for the district court’s approval. As indicated above, the district court denied Whittier’s petition to approve the adjustment, reasoning that NRS 164.795 does not allow for “retroactive” adjustment between principal and income. Essentially, it appears that the district court embraced Andrew’s argument that a special trustee may only adjust between principal and income accrued after the special trustee’s date of appointment, once the special trustee affirmatively adopts or elects a nontraditional investment strategy pursuant to NRS 164.795. This was error.
Although NRS 164.795 allows for adjustment by a special trustee, it is not clear whether a special trustee’s power to adjust is prospective only or may be exercised retroactively. Thus, this portion of NRS 164.795 is ambiguous. Consequently, we look to our rules of statutory construction and to legislative history to interpret the extent of a special trustee’s statutory power to adjust.
When the provisions of NRS Chapter 164 are read together, we conclude that NRS 164.795’s meaning becomes clear — it contemplates that a special trustee may, at a minimum, make a corrective adjustment between principal and income accrued in the year immediately preceding its appointment. Indeed, the determination of whether an adjustment between principal and income distributions is necessary often will require a review of data related to trust investments and returns at the close of the year. And no provision of NRS Chapter 164 requires a trustee to “announce” or formally “elect” any type of total return strategy or indicate that it will seek an adjustment at the end of the year. Rather, NRS 164.795(1) allows a trustee to exercise the power to adjust whenever (1) the trustee manages trust assets as a prudent investor, (2) the terms of the trust require distribution of income to an income beneficiary, *178 and (3) the trustee is unable to otherwise comply with NRS 164.720’s fairness mandate. As stated in the comments to the Principal and Income Act, no affirmative action is required to be a prudent investor, as this requirement “will be met whether the prudent investor rule applies because the Uniform Act or other prudent investor legislation has been enacted, the prudent investor rule has been approved by the courts, or the terms of the trust require it.”[20]
Comments by the drafters of the Principal and Income Act further suggest that the drafters anticipated that actions taken by a prudent investor may require a corrective adjustment. For example, the drafters stated that “[the power to adjust] authorizes the trustee to make adjustments between principal and income that may be necessary if the income component of a portfolio’s total return is too small or too large because of investment decisions made by the trustee under the prudent investor rule.”[21] This language clearly indicates that the power to adjust may be exercised correctively, after the trustee has an opportunity to review trust data and trustee investment decisions for the immediately preceding year.[22] Although a special trustee must be appointed to make an adjustment when all trustees are also interested trust beneficiaries, the special trustee is simply a neutral party who “stands in the shoes” of the interested trustees to make any adjustment that a disinterested trustee would deem necessary at the close of the year.
Here, even though Whittier was not appointed special trustee until 2005, the existing trustees, including Gordon, were subject to the provisions of the Principal and Income Act and the Uniform Prudent Investor Act from their enactment dates in Nevada. Any *179 principal and income accrued after 2003 was also subject to the provisions of the Principal and Income Act.[23] These time frames indicate that the trustees were already bound to act as prudent investors and had the power to invest using a total return strategy during 2004, even if a special trustee had not yet been appointed. In addition, as provided by the terms of the Orpheus Trust, the trustees were also required to distribute trust income to Gordon. The trustees of the Orpheus Trust sought appointment of a special trustee at the end of 2004, and after reviewing trust data for the 2004 year, Whittier determined that an adjustment was necessary.
Accordingly, we conclude that all three requirements to make an adjustment under NRS 164.795 were satisfied, as the trustees were subject to the requirements of the Uniform Prudent Investor Act, the terms of the trust required that trust income be distributed to Gordon, and Whittier determined that an adjustment was necessary to comply with the fairness mandate of NRS 164.720. Thus, because Whittier was appointed in early 2005 and sought an adjustment between principal and income accrued in the immediately preceding year, this proposed adjustment does not constitute an impermissible “retroactive” application of NRS 164.795.

Analysis of adjustment under NRS 164.795(2)

Once a trustee determines that an adjustment between principal and income may be necessary pursuant to NRS 164.795(1), NRS 164.795(2) requires a trustee to consider a wide variety of factors in determining the propriety and amount of any proposed adjustment. NRS 164.795(2) specifically provides as follows:
In deciding whether and to what extent to exercise the power [to adjust between principal and income], a trustee shall consider all factors relevant to the trust and its beneficiaries, including the following factors to the extent they are relevant:
(a) The nature, purpose and expected duration of the trust;
(b) The intent of the settlor;
(c) The identity and circumstances of the beneficiaries;
(d) The needs for liquidity, regularity of income, and preservation and appreciation of capital;
*180 (e) The assets held in the trust, the extent to which the assets consist of financial assets, interests in closely held enterprises, tangible and intangible personal property, or real property, the extent to which an asset is used by a beneficiary, and whether an asset was purchased by the trustee or received from the settlor;
(f) The net amount allocated to income under the other provisions of NRS 164.780 to 164.925, inclusive, and the increase or decrease in the value of the principal assets, which the trustee may estimate as to assets for which market values are not readily available;
(g) Whether and to what extent the terms of the trust give the trustee the power to invade principal or accumulate income or prohibit him from invading principal or accumulating income, and the extent to which he has exercised a power from time to time to invade principal or accumulate income;
(h) The actual and anticipated effect of economic conditions on principal and income and effects of inflation and deflation; and
(i) The anticipated tax consequences of an adjustment.
Only after analyzing these factors can a trustee determine whether an adjustment is appropriate.[24] Once the trustee has determined that an adjustment is necessary, NRS 164.725(2) provides that the trustee may provide notice of the proposed action to any interested beneficiary. If no beneficiary objects, the trustee may take the proposed action and “is not liable to any present or future beneficiary with respect to the proposed action.”[25]
If a beneficiary objects to the proposed action, the trustee may petition the district court for an order to take the proposed action.[26] Once the trustee has submitted its proposed adjustment to the district court, a beneficiary may oppose the action in district court. However, as provided in NRS 164.725(7), “[t]he burden is on the beneficiary to prove that the proposed action should not be taken or should be modified.”
Here, Andrew properly objected to Whittier’s notice of proposed adjustment and opposed Whittier’s subsequent petition for approval of the proposed adjustment under the guidelines set forth in NRS 164.795. As an alternate ground for denying Whittier’s petition, the district court briefly noted in its order denying reconsideration that Whittier failed to properly analyze all factors listed in *181 NRS 164.795(2) in analyzing the proposed adjustment.[27] In this, the district court observed that while Whittier briefly stated that it had analyzed each of the factors listed in NRS 164.795(2), it did not provide a detailed analysis of each factor. Specifically, it appears that Whittier provided a comprehensive analysis of the assets in the trust and the disparity between the net return of a trust as a whole and the income payable to Gordon but did not substantively address a number of other factors, including the intent of the settlor, the nature, purpose, and duration of the trust, the need for liquidity or preservation of capital, the assets held in the trust, or the actual and anticipated effect of economic conditions on principal and income.
We conclude that the district court erred in making a general determination that Whittier did not comply with the requirements of NRS 164.795(2) without the benefit of a hearing or briefing by the parties. Whittier’s petition for approval of proposed adjustment clearly alleged that Whittier had considered the factors listed in NRS 164.795(2) and provided detailed analyses of several of these factors. Under NRS 164.725(7), it was Andrew who bore the burden of demonstrating that Whittier’s proposed adjustment was not proper; Whittier did not bear the burden of proving that the adjustment was proper. By summarily concluding that Whittier did not appropriately analyze the factors provided in NRS 164.795(2), the district court failed to hold Andrew to his proper burden of proof.[28] Accordingly, we reverse the district court’s order and remand this matter to the district court for further proceedings to determine whether Whittier appropriately complied with the requirements of NRS 164.795(2).[29]

*182
CONCLUSION

We conclude that the power to adjust between trust principal and income set forth in NRS 164.795 is a corrective power and may be exercised with respect to principal and income accrued in the year immediately preceding a special trustee’s appointment. Thus, so long as the trustees are bound by the standards of the Uniform Prudent Investor Act, the terms of the trust require distribution of income to an income beneficiary, and a special trustee determines that an adjustment is necessary, the special trustee may adjust between principal and income accrued in the preceding year. Therefore, we conclude that Whittier’s proposed adjustment was not barred as an impermissible “retroactive adjustment,” and we reverse the district court’s order denying Whittier’s petition for approval of the proposed adjustment between principal and income for the 2004 trust year. We further note that in analyzing the propriety of any proposed adjustment, the challenging beneficiary bears the burden of demonstrating that the trustee did not appropriately comply with the requirements set forth in NRS 164.795(1) and (2). Because the district court did not hold Andrew to his appropriate burden, we remand this matter to the district court for additional proceedings consistent with this opinion.

 See NRS 164.720(1); NRS 164.745(2), (5).

 NRS 164.795(3)(g); NRS 164.795(4).

 City of Henderson v. Kilgore, 122 Nev. 331, 334, 131 P.3d 11, 13 (2006).

 Erwin v. State of Nevada, 111 Nev. 1535, 1538-39, 908 P.2d 1367, 1369 (1995).

 Baron v. District Court, 95 Nev. 646, 648, 600 P.2d 1192, 1193-94 (1979).

 Gallagher v. City of Las Vegas, 114 Nev. 595, 599, 959 P.2d 519, 521 (1998).

 Washoe Med. Ctr. v. Dist. Ct., 122 Nev. 1298, 1302, 148 P.3d 790, 793 (2006).

 Leven v. Frey, 123 P.3d 399, 405, 168 P.3d 712, 716 (2007).

 Hunt v. Warden, 111 Nev. 1284, 1285, 903 P.2d 826, 827 (1995).

 See id.

 See NRS 164.705 to 164.775.

 NRS 164.745(2).

 NRS 164.720(1).

 NRS 164.720(2).

 See generally Unif. Principal and Income Act § 104 cmt. (amended 1997), 7A U.L.A. 436-37 (2006).

 NRS 164.780 to 164.925.

 See NRS 164.795(3)(g) (prohibiting a trustee who is also a beneficiary from making an adjustment); NRS 164.795(4) (allowing a disinterested cotrustee to make an adjustment, even if the remaining trustees are not authorized to do so).

 Unif. Principal and Income Act § 104 cmt. (amended 1997), 7A U.L.A. 435-36 (2006).

 Hearing on S.B. 196 Before Assembly Comm, on Commerce and Labor, 72d Leg. (Nev., May 14, 2003) (testimony of Frank Daykin).

 Unif. Principal and Income Act § 104 cmt. (amended 1997), 7A U.L.A. 436 (2006).

 Id.

 In addition, with respect to NRS 164.795(l)’s third requirement that the trustee determine that it is unable to otherwise comply with NRS 164.720(2)’s impartiality and fairness mandate, a trustee simply cannot make this inquiry until the trustee receives all data related to trust investments and returns at the close of the year. Similarly, when determining “whether and to what extent” to exercise the power to adjust, NRS 164.795(2) provides an extensive list of factors for the trustee to consider. Many of these factors also cannot be fairly analyzed until the trustee receives trust data for the preceding year. For example, NRS 164.795(2.)(f) requires the trustee to consider “[t]he net amount allocated to income . . . and the increase or decrease in (he value of the principal assets, which the trustee may estimate as to assets for which market values are not readily available,” while NRS 164.795(2)(h) stipulates that the trustee must also consider “[tjhe actual and anticipated effect of economic conditions on principal and income and effects of inflation and deflation.” Each of these requirements supports our conclusion that the Legislature intended the power to adjust to be a corrective power that could be used to adjust between principal and income accrued in the immediately preceding year.

 See In re Estate of Jenkins, 97 S.W.3d 126 (Term. Ct. App. 2002) (concluding that the Principal and Income Act only applies to principal and income accrued after its enactment date). Both Andrew and the district court cite Jenkins for the proposition that a trustee may not take any “retroactive” action pursuant to the Principal and Income Act. We disagree that the holding in Jenkins compels this result. The court in Jenkins concluded only that a trustee may not “retroactively” apply the Principal and Income Act provisions to funds accrued before the date a state enacts the Principal and Income Act. Id. at 132. Here, Whittier only sought to adjust funds accrued in 2004, after Nevada enacted the Principal and Income Act provisions. Therefore, the “retroactivity” analysis of Jenkins does not apply.

 See NRS 164.795(2) (stating that the trustee “shall” consider the enumerated factors, to the extent relevant, in determining whether to exercise the power to adjust).

 NRS 164.725(6).

 NRS 164.725(7).

 “Ordinarily, an order denying a motion for reconsideration is not substantively appealable.” Rico v. Rodriguez, 121 Nev. 695, 700 n.1, 120 P.3d 812, 815 n.1 (2005). Even so, if an order denying reconsideration is entered before an appeal is taken, this court may consider that order to the extent that it clarifies the order from which an appeal is taken. Id. at 700 n.1, 120 P.3d at 815-16 n.1; see also Arnold v. Kip, 123 Nev. 410, 417, 168 P.3d 1050, 1054 (2007). Here, the order denying reconsideration was entered on November 22, 2005. Whittier filed its notice of appeal from the original denial of its petition on December 1, 2005, indicating that this court may consider the district court’s alternate ground for denying Whittier’s petition.

 We acknowledge, but reject, Whittier’s argument that the district court’s failure to hold Andrew to his appropriate burden of proof indicates that Andrew may not contest the propriety of the proposed adjustment on remand. Because practice under the Principal and Income Act is relatively new to Nevada, we conclude that this matter should proceed as clarified, allowing the parties the opportunity to fully litigate this matter on the merits.

 We note that in an unrelated dispute regarding the Getty Family Trust, the California Court of Appeal determined in 1972 that neither Sarah nor John Paul Getty had any intention to provide income for John Paul’s children, including Gordon, by means of the trust. Getty v. Getty, 28 Cal. App. 3d 996 *182 (Ct. App. 1972). However, a later superior court order creating the successor Gordon Family Trust (a predecessor to the Orpheus Trust) specified that no provision of the 1972 decision in Getty v. Getty required trustees to favor either income or remainder beneficiaries in administering the trust. We anticipate that each of these decisions may be relevant in analyzing the nature, purpose, and duration of the trust, as well as the intent of the settlor, as required by NRS 164.795(2)(a) and (b).